STATE OF CONNECTICUT *v.* CHRISTINE KING

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

 

Argued March 3—decision released June 1, 1982

*Bruce A. Sturman,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*John F. Cronan,* deputy assistant state's attorney, with whom, on the brief, was *John J. Kelly,* state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J.  The defendant was charged with burglary in the third degree in violation of General Statutes § 53a-103 and larceny in the third degree in violation of General Statutes § 53a-124. In a separate information, the defendant was also charged with possession of heroin and cocaine in violation of General Statutes § 19-481 (a). After a trial to a jury, the defendant was found guilty of all crimes charged and sentenced to an effective prison term of not less than two, nor more than four years.

The jury could reasonably have found the following facts: On January 14, 1979, at approximately 12:30 p.m., Roland and Diana Wegher were at their home at 93 Village Drive in Shelton. At that time, Mr. Wegher observed a yellow automobile pull into the driveway of a house under construction across the street from the Weghers. The house was being constructed by Fortin Construction Company and was close to completion. A man and a woman got out of the auto and entered the front door of the house. At this point, Mr. Wegher went into his basement.

About ten minutes later, Mrs. Wegher told Mr. Wegher that the woman across the street was having trouble getting out of the icy driveway. Mr. Wegher came back upstairs and noticed that the yellow auto had been turned around so that its trunk was backed up to the garage door. The woman, who was in the auto at this time, got out of the auto, approached the garage window and nodded her head or gestured to the man, who was inside the garage. The woman returned to the auto and the man opened the garage door from the inside.

The man took something from the trunk and put it in the back seat of the auto. He then went back into the garage and began placing cardboard boxes into the trunk of the auto. These boxes contained two toilets valued at $212. Mr. Wegher phoned the police while Mrs. Wegher tried to focus a pair of binoculars in an attempt to read the license plate number. Mrs. Wegher was having difficulty focusing the binoculars, so Mr. Wegher gave her the phone while he took the binoculars. He identified the license plate number as the car was passing his house. The car was registered to the defendant.

On January 29, 1979, Detective Stephen Bodak and fellow officers of the Ansonia detective bureau executed arrest warrants for the defendant and Bruce Marek, her boyfriend, on charges of burglary and larceny. Both were taken to the Shelton police department where they were processed. During the processing, Bodak searched the defendant's purse and found numerous syringes and hypodermic needles, a wad of cotton and a bottle cap with a wire attached (also known as a "cooker"). While the search did not reveal packets or envelopes of any drug, a small amount of liquid was found in the stem of one of the syringes. A toxicological examination revealed the presence of heroin, cocaine, and quinine in the hypodermic syringes and heroin, cocaine, quinine and lidocaine in the bottle cap with the wire on it.[1]

Prior to trial, the state was granted, over the defendant's objection and exception, a motion for joinder of the two informations, pursuant to Practice Book § 829, and the matters were tried together. On appeal, the defendant claims that the trial court erred (1) by granting the motion for joinder of the burglary and larceny information with the heroin and cocaine possession information and (2) by allowing into evidence a toxicological report without also requiring testimony of the chemist who actually performed the tests under the unique circumstances of this case where, during analysis, the narcotics evaporated.

---

[1] There were a total of ten hypodermic syringes, one cotton wad and one bottle cap with a wire attached to it. Each of these contained different combinations of the drugs heroin, cocaine, quinine and lidocaine.

# I

This case presents us with our first opportunity to construe our rules of joinder of indictments and informations since their amendment in 1976. Section 492 of the 1963 Practice Book and General Statutes § 54-57 provided: "Whenever two or more cases are pending at the same time against the same party in the same court *for offenses of the same character,* counts for such offenses may be joined in one information unless the court orders otherwise." (Emphasis added.) In 1976, the rule, but not the statute, was amended to read as follows: "The judicial authority may, upon his own motion or the motion of any party, order that two or more indictments or informations or both, whether against the same defendant or different defendants, be tried together." Practice Book, 1963, § 2240 (now Practice Book, 1978, § 829). The new rule omits reference to the requirement that the offenses joined be of the "same character." The drafters of the amendment stated that "[t]his extremely broad provision permits the court *sua sponte* or on motion to order joint trial of different charges, whether or not related, and whether or not against the same defendants. It thus goes beyond Federal Rules of Criminal Procedure, Rule 13 as well as existing statutory law [General Statutes § 54-57], and should be read in light of Sec. 2239 [now Sec. 828] permitting severance if prejudice may result." (Footnotes omitted.) Orland, Connecticut Criminal Procedure (1976), pp. 177–78. It is apparent that § 829 intentionally broadened the circumstances under which two or more indictments or informations could be joined and that whether the offenses are of the "same character" is no longer essential.

We must therefore determine whether joinder is controlled by the statute or the rule.

"The Superior Court is empowered to adopt and promulgate rules 'regulating pleading, practice and procedure in judicial proceedings in courts in which they have the constitutional authority to make rules, for the purpose of simplifying proceedings in the courts and of promoting the speedy and efficient determination of litigation upon its merits. Such rules shall not abridge, enlarge or modify any substantive right . . . .' General Statutes § 51-14 (a) . . . . Just as the general assembly lacks the power to enact rules governing procedure that is exclusively within the power of the courts; Conn. Const., art. V § 1; *State* v. *Clemente,* [166 Conn. 501, 510–11, 516, 353 A.2d 723 (1974)]; so do the courts lack the power to promulgate rules governing substantive rights and remedies. General Statutes § 51-14 (a); *State* v. *Clemente,* supra, [507], 509–10; see *State* v. *Rodriguez,* 180 Conn. 382, 385–86, 429 A.2d 919 (1980). Additionally the court rules themselves are expressly limited in scope to practice and procedure in the Superior Court; Practice Book § 1; and do not purport to reach beyond such limits." *Steadwell* v. *Warden,* 186 Conn. 153, 162–63, 439 A.2d 1078 (1982). With reference to the rule relating to disclosure of presentence investigation reports, two members of this court have stated: " '[C]ourts have an inherent power, independent of statutory authorization, to prescribe rules to regulate their proceedings and facilitate the administration of justice as they deem necessary.' *State* v. *Clemente,* supra, 514. It was in the exercise of this power that the judges of the Superior Court adopted § 917 in 1976 as part of a major revision of the rules of criminal procedure." (Footnote

omitted.) *Steadwell* v. *Warden*, supra, 165 (*Shea, J.,* dissenting). We likewise believe that § 829, also part of the revision of the rules of criminal procedure, is a rule which regulates court procedure and facilitates the administration of justice and does not infringe on any substantive right. Therefore, we will measure the trial court's decision on the motion for joinder against the standards of § 829.

The defendant claims that the trial court's granting of the state's motion for joinder resulted in a substantial injustice to her. She claims that (1) only offenses of the "same character" can be joined pursuant to General Statutes § 54-57 and (2) even if offenses of different characters can be joined, the court abused its discretion in joining these offenses. Since our holding that offenses of different characters can be joined under Practice Book § 829 disposes of the defendant's first basis, we will now address her alternative argument.[2]

The defendant claims substantial prejudice in three respects. First, she claims that because of joinder, "the jury may consider that a person charged with doing so many things is a bad [person] who must have done something, and may cumulate the evidence against him . . ."; see *Drew* v. *United States,* 331 F.2d 85, 88 (D.C. Cir. 1964); second, she claims that evidence of one

---

[2] Our holding in no way invalidates our previous case law on the subject of joinder. The trial court still must exercise its discretion in determining whether to join indictments or informations and prior cases on this point remain unaffected. See *State* v. *Jonas,* 169 Conn. 566, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 2d 331 (1976); *State* v. *Oliver,* 161 Conn. 348, 288 A.2d 81 (1971); *State* v. *Silver,* 139 Conn. 234, 93 A.2d 154 (1952); *State* v. *Bradley,* 134 Conn. 102, 55 A.2d 114 (1947), cert. denied, 333 U.S. 827, 68 S. Ct. 453, 92 L. Ed. 1112 (1948).

offense could have been used to convict her of a second offense even though that evidence would have been inadmissible at a separate trial; and third, she claims that her decision to testify was impermissibly influenced because she wished to testify as to one charge but not as to the other.

"The most obvious example of possible prejudice is that, when the crimes, near in time, place and circumstance, are so similar although legally unconnected, as in the present case, there is danger that the jury will use the evidence of one crime to convict the defendant of the other crimes. See *Drew* v. *United States,* 331 F.2d 85, 89 (D.C. Cir. [1964]); 1 Wigmore, Evidence (3d Ed.) § 194." *State* v. *Oliver,* 161 Conn. 348, 361, 288 A.2d 81 (1971). In *State* v. *Jonas,* 169 Conn. 566, 570, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 2d 331 (1976), we stated that the question of severance rested within the sound discretion of the trial court and that the exercise of that discretion could not be disturbed unless it has been manifestly abused. See *State* v. *Silver,* 139 Conn. 234, 93 A.2d 154 (1952). In *Silver,* "we defined the test to be applied as follows . . . : 'The discretion of a court to order separate trials should be exercised only when a joint trial will be substantially prejudicial to the rights of the defendant, and this means something more than that a joint trial will be less advantageous to the defendant. *State* v. *McCarthy,* 130 Conn. 101, 103, 31 A.2d 921 [1943]; *State* v. *Castelli,* 92 Conn. 58, 63, 101 A. 476 [1917]. The test is whether substantial injustice will result to the defendant if the charges are tried together. *State* v. *Klein,* 97 Conn. 321, 324, 116 A. 596 [1922].' The only example of substantial injustice given in *Silver* concerned evidence of such brutality by the

defendant that would tend to arouse the passion of the jury to the extent of interference with a fair consideration of the evidence relating to other charges . . . ." *State* v. *Jonas,* supra, 570–71.[3]

Judge Learned Hand, in *United States* v. *Lotsch,* 102 F.2d 35 (2d Cir.), cert. denied, 307 U.S. 622, 59 S. Ct. 793, 83 L. Ed. 1500 (1939), stated: "There is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively; that is, that, although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all. This possibility violates the doctrine that only direct evidence of the transaction charged will ordinarily be accepted, and that the accused is not to be convicted because of his criminal disposition. Yet in the ordinary affairs of life such a disposition is a convincing factor, and its exclusion is rather because the issue is practically unmanageable than because it is not rationally relevant. When the accused's conduct on several separate occasions can properly be examined in detail, the objection disappears, and the only consideration is whether the trial as a whole may not become too confused for the jury. . . .

---

[3] *State* v. *Jonas,* 169 Conn. 566, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 2d 331 (1976), stands for the proposition that indictments or informations, which would otherwise be severed under the rationale of *State* v. *Oliver,* 161 Conn. 348, 288 A.2d 81 (1971), will not be severed if evidence of one crime tends to corroborate the testimony of a victim of a sexual offense to which General Statutes § 53a-68 applies. This statute, which has since been repealed, required corroboration of the testimony of a victim of certain sex offenses in order for an accused to be found guilty of the crime charged.

"Here we can see no prejudice from joining the three charges: the evidence as to each was short and simple; there was no reasonable ground for thinking that the jury could not keep separate what was relevant to each. The joinder was therefore proper . . . ." Id., 36. See *Drew* v. *United States,* supra, 91; *Langford* v. *United States,* 268 F.2d 896 (D.C. Cir. 1959); *Dunaway* v. *United States,* 205 F.2d 23 (D.C. Cir. 1953); *United States* v. *Liss,* 137 F.2d 995 (2d Cir.), cert. denied, 320 U.S. 773, 64 S. Ct. 78, 88 L. Ed. 462 (1943). "In summary, then, even where the evidence would not have been admissible in separate trials, if, from the nature of the crimes charged, it appears that the prosecutor might be able to present the evidence in such a manner that the accused is not confounded in his defense and the jury will be able to treat the evidence relevant to each charge separately and distinctly, the trial judge need not order severance or election at the commencement of the trial. If, however, it appears at any later stage in the trial that the defendant will be embarrassed in making his defense or that there is a possibility that the jury will become or has become confused, then, upon proper motion, the trial judge should order severance." *Drew* v. *United States,* supra, 91–92.

In the present case, after weighing the consideration of the judicial economy of a single trial against the consideration of substantial injustice to the accused, we conclude that joinder was not erroneous. There is no question that joinder of the informations was obviously less advantageous than a separate trial. That, in and of itself, is hardly dispositive of the issue. See *State* v. *Jonas,* supra, 570; *United States* v. *Knife,* 592 F.2d 472 (8th Cir.

1979). "Needless to say, severance is not necessarily to be had for the asking." *People* v. *Shapiro,* 50 N.Y.2d 747, 757, 409 N.E.2d 897 (1980). The grant or denial of a motion for severance rests in the sound discretion of the trial judge. *State* v. *Jonas,* supra, 570; *State* v. *Silver,* supra, 240; *State* v. *Klein,* supra, 324. Consistent with this discretion, which is broad, an accused bears a heavy burden to show that the denial of severance resulted in substantial injustice because of a manifest abuse of discretion in denying severance. *United States* v. *Morrow,* 537 F.2d 120, 134 (5th Cir. 1976), cert. denied sub nom. *Martin* v. *United States,* 430 U.S. 956, 97 S. Ct. 1602, 51 L. Ed. 2d 806 (1977); *State* v. *Jonas,* supra, 570; *State* v. *Oliver,* supra; *Commonwealth* v. *Gallison,* 421 N.E.2d 757, 765 (Mass. 1981). The burden includes a showing that any prejudice from joinder may be beyond the curative power of the court's instructions. See *United States* v. *Avarello,* 592 F.2d 1339, 1346 (5th Cir.), cert. denied, 444 U.S. 844, 100 S. Ct. 87, 62 L. Ed. 2d 57 (1979); *Commonwealth* v. *Gallison,* supra; cf. *United States* v. *Foutz,* 540 F.2d 733, 738 (4th Cir. 1976).

The evidence introduced was simple, separable and straightforward. The danger that the jury cumulated and considered evidence of one offense is not substantial in this case. See *Dunaway* v. *United States,* supra, 26–27. In her brief the defendant concedes that the danger that proof of one offense may be used to convict of a second offense, even though inadmissible at a separate trial, poses "greater problems in trials involving similar offenses." The trial court specifically, sufficiently and without exception charged the jury on this issue

and, absent any showing to the contrary, we must assume the jury followed those instructions. See *State* v. *McCall*, 187 Conn. 73, 444 A.2d 896 (1982).[4]

The consideration whether evidence of the burglary and larceny charges would be admissible in a separate trial on the drug charge does not require a different result in this case. The defendant's arrest on the latter charge was clearly incident to her arrest on the former charges. While the trial judge observed that trying the two informations together "would result in undue prejudice," he went on to say that that joinder would not result "in such great prejudice as would outweigh the practical result in trying both cases together . . . ." We agree and cannot conclude that this was a manifest abuse of discretion so as to result in substantial injustice to the defendant to warrant a reversal.

As to any "influence" on the defendant's decision to testify which the joinder might have had, we note that this claim was never raised at trial or at the hearing on the pretrial motion for joinder.[5] Since this claim does implicate a fundamental constitutional right, i.e., the right of an accused to

---

[4] The court charged as follows:

"The defendant, Christine King, has been charged in two separate cases with a burglary and larceny, alleged to have been committed on January 14, 1979, and possession of narcotics and drugs, alleged to have been committed on January 29, 1979.

"You are not to assume or to consider that there is any relationship between the two incidents, or cases. Further, no inference is to be made by you that the burglary and larceny offenses may have been committed as the result of any drug dependency on the part of Christine King. To make such an inference would be wrong, and improper. Each case must be considered separately on the facts as presented in court."

[5] At the pretrial hearing, counsel for the defendant argued against a joinder because the events described in the two informations were unrelated with respect to time and because the jury could infer that

testify; see Conn. Const., art. I § 8; we will review this claim. See *State* v. *Miller,* 186 Conn. 654, 660, 443 A.2d 906 (1982); *State* v. *Evans,* 165 Conn. 61, 70–71, 327 A.2d 576 (1973).

An "accused's election to testify on some but not all of the charges on trial does not automatically require a severance. 'Such a rule,' . . . 'in fact, would divest the court of all control over the matter of severance and entrust it to the defendant.' There remains with the trial judge . . . a discretion in the matter, though a discretion within limits narrowly confined by the exigencies of the situation. In the end, it is incumbent upon the judge 'to weigh the considerations of "economy and expedition in judicial administration" against the defendant's interest in having a free choice with respect to testifying,' and to grant or deny the severance accordingly." (Footnotes omitted.) *Bradley* v. *United States,* 433 F.2d 1113, 1122 (D.C. Cir. 1969). See *Blunt* v. *United States,* 404 F.2d 1283, 1289 (D.C. Cir. 1968), cert. denied, 394 U.S. 909, 89 S. Ct. 1021, 22 L. Ed. 2d 221 (1969); *Baker* v. *United States,* 401 F.2d 958, 976–77 (D.C. Cir. 1968), cert. denied, 400 U.S. 965, 91 S. Ct. 367, 27 L. Ed. 2d 384 (1970); *Strickland* v. *United States,* 389 A.2d 1325, 1332 (D.C. App. 1978), cert. denied, 440 U.S. 926, 99 S. Ct. 1258, 59 L. Ed. 2d 481 (1979); *Commonwealth* v. *Peterson,* 453 Pa. 187, 307 A.2d 264 (1973); see also *Wangrow* v. *United States,* 399 F.2d 106, 112 (8th Cir.), cert. denied, 393 U.S. 933, 89 S. Ct. 292, 21 L. Ed. 2d 270 (1968); *Roldan* v. *United States,* 353 A.2d 292, 294 (D.C. App. 1976); *Coleman*

she committed the robbery to obtain money to support her drug habit. The court stated that evidence of this latter ground would be inadmissible and that a charge to the jury would clarify what evidence they could properly consider on each crime charged.

v. *United States,* 298 A.2d 40, 43 n.3 (D.C. App. 1972), cert. denied, 413 U.S. 921, 93 S. Ct. 3070, 37 L. Ed. 2d 1043 (1973).

In asserting that the "greatest danger" resulting from joinder is its influence on her decision whether to testify, the defendant argues that it is "especially significant in this case where 'prejudice may develop when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence.' *Cross* v. *United States,* 335 F.2d 987, 989 (D.C. Cir. 1964)." *Cross* involved two defendants charged and tried together in one trial of two counts of robbery, one robbery being of a church rectory on February 23, 1962, and the other being that of a tourist home on May 2, 1962. In reversing the trial court which denied severance, the appellate court held[6] that Cross was embarrassed and confused in making his defense where, although he testified, he had wished to testify on one count and remain silent on the other.[7] Although Cross testified as to both counts, he was found guilty on the count on which he stated, on appeal, he had not wished to testify and found not guilty on the other count on which he testified

---

[6] The *Cross* court noted that, at the trial, Cross repeatedly tried, without his counsel's assistance, to elaborate upon his objections to the joinder, but that the trial court seemed to have precluded that by insisting that the issue of joinder had been determined in the pretrial denial of severance and by demanding a categorical answer to its original inquiry when the court had asked Cross whether he wished to testify in his own behalf to which Cross answered: "Which case, Your Honor?" *Cross* v. *United States,* 335 F.2d 987, 990 (D.C. Cir. 1964).

[7] In *Cross,* the ruling on the propriety of the joinder attacked was under the Federal Rules of Criminal Procedure and not on constitutional grounds. *Cross* v. *United States,* 335 F.2d 987, 988–89 (D.C. Cir. 1964).

that he was a victim and not one of the robbers.[8] In ordering a new trial for Cross and the codefendant on the count upon which he was convicted, the court said: "In a separate trial of that count the jury would not have heard his admissions of prior convictions and unsavory activities; nor would he have been under duress to offer dubious testimony on that count in order to avoid the damaging implication of testifying on only one of the two joined counts." *Cross* v. *United States,* supra, 990–91.

In its later decisions, the *Cross* court indicated that that case should not be read so broadly as conclusively to establish prejudice based on the mere fact that the defendant moves to sever. *Baker* v. *United States,* supra, 976; see *Blunt* v. *United States,* supra, 1289. That same court held that "no need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reason for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defend-

---

[8] In commenting on *Cross* one court has said: "Examining the record of the defendants' testimony, the Court of Appeals [in *Cross*] determined that the defendant Cross offered convincing evidence on the count upon which he was acquitted but was plainly evasive and unconvincing in his testimony on the count upon which he was convicted." *State* v. *Weddel,* 29 Wash. App. 461, 467, 629 P.2d 912 (1981); see *Cross* v. *United States,* 335 F.2d 987, 990 (D.C. Cir. 1964), also calling Cross' denial of the count on which he was found guilty as "plainly evasive and unconvincing."

ant's interest in having a free choice with respect to testifying." (Footnote omitted.) *Baker* v. *United States,* supra, 977; see *Blunt* v. *United States,* supra, 1289. A number of courts have endorsed this "convincing showing" type of standard for severance when such a claim is made. See, e.g., *United States* v. *Werner,* 620 F.2d 922, 930 (2d Cir. 1980); *United States* v. *Jamar,* 561 F.2d 1103, 1108 n.9 (4th Cir. 1977) ("particularized showing"); *United States* v. *Jardan,* 552 F.2d 216, 220 (8th Cir.), cert. denied, 433 U.S. 912, 97 S. Ct. 2982, 53 L. Ed. 2d 1097 (1977); *United States* v. *Williamson,* 482 F.2d 512 (5th Cir. 1973); *Huff* v. *State,* 598 P.2d 928, 933 (Alaska 1979); *People* v. *Shapiro,* supra, 754 ("good cause"); *State* v. *Roberts,* 62 Ohio St. 2d 170, 175, 405 N.E.2d 247, cert. denied, 449 U.S. 879, 101 S. Ct. 227, 66 L. Ed. 2d 102 (1980); *State* v. *Weddel,* 29 Wash. App. 461, 629 P.2d 912 (1981). The circumstances of this case as we have pointed them out hardly approach this level of persuasion.

At no time during or after her testimony did the defendant alert the trial court, in any way, to any possible influence or interference with her right to testify resulting from the joinder.[9] She did not move for severance, pursuant to Practice Book § 828, nor did she raise this as a possible ground for a post-trial motion.[10] See Practice Book §§ 897,

[9] At the time of the pretrial hearing on the state's motion for joinder, the defendant did not suggest in her argument opposing joinder that she was claiming that her right to testify would possibly be influenced or interfered with as she now claims.

[10] The defendant did move for a mistrial during her cross-examination on the ground that the state was attempting to ask the defendant about similar, but unrelated, robberies with which the defendant was charged and which were pending in other cases. The trial court denied this motion.

901.[11] The defendant testified and denied knowledge of the robbery and also denied knowledge of how she came to be in possession of the narcotics. "While the guilty verdict indicates the jury did not believe [her] denial, there is no support in the record for [her] contention that [her] conviction on the drug charge was made more likely by the fact [she] took the stand to explain [her] actions which led to the [robbery charge]." *United States* v. *Williamson,* 482 F.2d 508, 512 (5th Cir. 1973). The prosecution did not introduce, for purposes of impeachment, any prejudicial evidence concerning the defendant's reputation. See *United States* v. *Williamson,* supra, 512; *Bradley* v. *United States,* supra, 1123; *Baker* v. *United States,* supra, 977; *Dunaway* v. *United States,* supra, 26; *Coleman* v. *United States,* supra, 43 n.3. The defendant "had a fair choice to take the stand or not uninfluenced to any significant degree by the consolidation. We base this judgment on the facts of this case, without intimating any general approval of consolidated trials where it can fairly be said that by reason of

---

[11] In the context of a motion to set aside a verdict in a civil action seeking damages, we have stated: "The evident purpose of the statute is to provide an opportunity for the trial court to pass upon claims of error which may become the subject of an appeal. This procedure is not a mere superfluity with respect to rulings made at trial, as suggested by the commentators. The opinion of the trial court with respect to the error claimed may dissuade a prospective appellant from pursuing an unmeritorious appeal and also may be helpful to the appellate court, particularly with respect to evaluating the effect of a ruling upon a verdict. See *Munson* v. *Atwood,* [108 Conn. 285, 289, 142 A. 737 (1928)]. The first-hand perception of the atmosphere of a trial available to the court below, which we have regarded as highly significant in deciding claims related to the sufficiency of the evidence, may be equally valuable in assessing the importance of rulings during a trial." *Pietrorazio* v. *Santopietro,* 185 Conn. 510, 514–15, 441 A.2d 163 (1981). This statement is equally applicable to the trial court's rulings on post trial motions in a criminal case.

the consolidation the accused is deprived of a choice whether or not to take the stand on any of the charges." *Dunaway* v. *United States,* supra, 26. "There is the obvious economy of a single trial and, furthermore, the defendant, if successful, will have ¡wiped the slate clean and will not have to face a series of prosecutions, a conviction in any one of which could result in a long sentence." *State* v. *Oliver,* supra, 360.[12] The defendant has not sustained her burden on this issue. In the absence of any evidence of substantial prejudice offending the limits of tolerance of prejudice of § 829 of the Practice Book, we find no abuse of discretion in the trial court's granting of the state's motion for joinder.

## II

The defendant's second claim is that she was denied her sixth amendment constitutional right to confront the chemist who actually performed the toxicological tests and who was the last person to see any amount of the narcotics allegedly seized from the defendant because the chemist was not called to the witness stand to testify.[13] She states that she is well aware of this court's decisions in *State* v. *Cosgrove,* 181 Conn. 562, 436 A.2d 33

---

[12] While it has been recognized in this context that "the convenience of trying different crimes against the same person and connected crimes against different defendants in the same trial is a valid governmental interest"; *Spencer* v. *Texas,* 385 U.S. 554, 562, 87 S. Ct. 648, 17 L. Ed. 2d 606, reh. denied, 386 U.S. 969, 87 S. Ct. 1015, 18 L. Ed. 2d 125 (1967); see *Richards* v. *State,* 451 P.2d 359 (Alaska 1969); this interest must be accorded its proper place in the circumstances of any given case.

[13] Even though this claim is also made for the first time on appeal, we will briefly consider it since we have done so on a previous occasion. See *State* v. *Reardon,* 172 Conn. 593, 599, 376 A.2d 65 (1977), construed by *Reardon* v. *Manson,* 644 F.2d 122, 124, 128, 129–30 (2d Cir. 1981); *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

(1980), and *State* v. *Reardon,* 172 Conn. 593, 376
A.2d 65 (1977), but contends that her situation is
distinguishable because no narcotics were offered
into evidence and no alleged narcotic substance
even existed after the toxicological tests were per-
formed. We do not agree.

At trial, Abraham Stolman, chief toxicologist
for the state, testified as to the presence of cocaine
and heroin in the substances seized from the defend-
ant on the basis of a report made by the chemist
who actually performed the tests. He stated that
the chemist, Helen Wright, performed these tests
under his supervision and direction and that he
also reviewed and examined the results to ensure
their accuracy.[14] Under practically identical cir-
cumstances, this court has recently and exhaustively
considered and rejected the claim that the chemist
who actually performed the tests must be called
to the stand to testify to comport with the constitu-
tional right to confrontation. See *State* v. *Cosgrove,*
supra, 569; *State* v. *Reardon,* supra, 599. The
defendant would have us create an exception to
those cases in the unique circumstance where, as
here, such a small amount of narcotic substance is
seized that, during testing, the substance is either

This case, arguing that the chemist should be produced by the state
where the narcotics involved have been expended in toxicological
testing, presents us with a claim different from that made in
*Reardon* or *Cosgrove.* Cf. *State* v. *Cosgrove,* 181 Conn. 562, 568
n.5, 436 A.2d 33 (1980).

[14] We note that, despite the defendant's statements to the con-
trary at oral argument, the record demonstrates that the written
toxicological report, itself, was not offered into evidence but that
Stolman merely testified from it. See *State* v. *Brown,* 169 Conn.
692, 704, 364 A.2d 186 (1975). When Stolman commenced to
testify from the report, the defendant's objection on hearsay grounds
was overruled. The defendant has not raised this as a claim of
error on appeal.

used up or evaporates or is otherwise destroyed.[15] She states that at the time she made a pretrial motion for discovery pursuant to Practice Book §§ 741 and 745 and General Statutes § 54-86a, the toxicological tests had already been performed and, thus, it was physically impossible for her independently to examine the alleged narcotics. Under these circumstances, she claims that the state had a duty to produce the chemist.

In *State* v. *Cosgrove,* supra, we stated: "While a defendant may be disadvantaged in certain contexts by the prosecutor's failure to call the extrajudicial declarant; see, e.g., *Phillips* v. *Neil,* 452 F.2d 337, 348 (6th Cir. [1971]); those disadvantages would seemingly be inconsequential in the present case because of the defendants' ability to call the chemist as their own witness. See, e.g., *State* v. *Walker,* 53 Ohio St. 2d 192, 197, 374 N.E.2d 132 [1978]. Moreover, it may well have been true that defendants' counsel, like Evans' counsel in *Dutton* v. *Evans,* [400 U.S. 74, 88 n.19, 91 S. Ct. 210, 27 L. Ed. 2d 213 (1970)], concluded that subpoenaing the extrajudicial declarant in this case would not have been in the best interest of their clients." Id., 580.

The defendant utilized her rights under the pretrial discovery rules and obtained a copy of the toxicological report. The defendant could also have subpoenaed the chemist, pursuant to General Statutes § 54-2a, if she had doubts about the report's reliability. See *State* v. *Cosgrove,* supra, 578. The fact that the narcotics had been used up or evaporated during testing (and thus were unavailable

---

[15] By this we do not mean to include a situation where intentional or other wrongdoing is alleged.

to the defendant) does not require the state to produce the chemist who actually performed the tests in this case. We can find no reason to distinguish this case from other situations, most notably sexual assault cases, breathalyzer tests, and to some extent, blood tests for alcohol, where the physical evidence of the offense has long since disappeared[16] and which placed no duty upon the state to produce the maker of the record relied upon. See *United States ex rel. Lurry* v. *Johnson,* 378 F. Sup. 818 (E.D. Pa. 1974) (hospital report of physical examination and findings of rape victim soon after attack); *Henson* v. *State,* 332 A.2d 773 (Del. 1975) ("Emergency Services" hospital record of physical examination and findings of rape victim soon after attack); *State* v. *Larochelle,* 112 N.H. 392, 297 A.2d 223 (1972) (breathalyzer test soon after arrest); *Robertson* v. *Commonwealth,* 211 Va. 62, 175 S.E.2d 260 (1970) (lab report of rape victim revealing presence of seminal fluid); see also *Kay* v. *United States,* 255 F.2d 476 (4th Cir.), cert. denied, 358 U.S. 825, 79 S. Ct. 42, 3 L. Ed. 2d 65 (1958) (lab report of blood test for alcohol soon after arrest admissible as official record); *People* v. *Porter,* 46 App. Div. 2d 307, 362 N.Y.S.2d 249 (1974) (lab report of blood test for alcohol soon after arrest); *State* v. *Kreck,* 86 Wash. 2d 112, 542 P.2d 782 (1975) (blood test of murder victim for presence of chloroform).[17]

---

[16] See footnote 15, supra.

[17] We note that it has been said that "[i]n the context of the Jencks Act, 18 U.S.C. § 3500, the [United States] Supreme Court has indicated that the circumstances of the destruction of evidence or material is highly important. It is also made clear that a good faith loss would not invoke the statutory sanctions of exclusion of the evidence." *United States* v. *Love,* 482 F.2d 213, 220 (5th Cir.), cert. denied sub nom. *Oglesby* v. *United States,* 414 U.S. 1026, 94 S. Ct. 453, 38 L. Ed. 2d 318 (1973).

In *State* v. *Lightle,* 210 Kan. 415, 502 P.2d 834 (1972), cert. denied, 410 U.S. 941, 93 S. Ct. 1406, 35 L. Ed. 2d 607 (1973), the Kansas Supreme Court held that it was not error to refuse to suppress tests made on two pills identified as "Dilaudid" when the pills had been expended in the testing process and the state could not produce the pills for independent testing by the defendant. In *Lightle,* the court said: "A request [to produce] is hardly reasonable if the object has ceased to exist by reason of valid conduct bringing about its nonexistence, such as for the making of a necessary chemical analysis. Other examples come to mind such as a blood or breath test to determine intoxication, or analysis of minute particles of any kind." Id., 416.[18] See also *Lee* v. *State,* 511 P.2d 1076 (Alaska 1973) (heroin); *State* v. *Herrera,* 365 So. 2d 399 (Fla. App. 1978) (heroin); *Poole* v. *State,* 291 So. 2d 723 (Miss.), cert. denied, 419 U.S. 1019, 95 S. Ct. 492, 42 L. Ed. 2d 292 (1974) (LSD); *State* v. *Teare,* 135 N.J. Super. 19, 342 A.2d 556 (1975) (preservation of test ampoules in breathalyzer test for alcohol in blood); cf. *People* v. *Taylor,* 54 Ill. App. 3d 454, 369 N.E.2d 573 (1977).

"Moreover, if the production of the chemist is deemed mandated by the confrontation clause in this case, it would seem that anyone involved in the tests would have to be produced, e.g., the person charged with ensuring the laboratory machines' accuracy. The laboratory could be quickly decimated and the court dockets congested waiting for the testimony of the laboratory personnel." (Foot-

---

[18] Stolman, testifying with reference to the hypodermic needles, syringes, etc. that were introduced into evidence, said that they did not presently contain any of the substances or residue of any of the substances the state laboratory testing found because "they were all extracted to determine whether any drug was present or not."

note omitted.) *State* v. *Cosgrove,* supra, 583. "The defendants' rights in these circumstances were adequately protected by available procedures for pretrial discovery, Practice Book, 1978, §§ 741, 745, and subpoenaing of the witness during trial. See, e.g., *People* v. *Gower,* 42 N.Y.2d 117, 121, 366 N.E.2d 69 [1977]; *State* v. *Walker,* 53 Ohio St. 2d 192, 197, 374 N.E.2d 132 [1978]." *State* v. *Cosgrove,* supra, 581–82.

Finally, the defendant contends that a recent United States Supreme Court case, *Ohio* v. *Roberts,* 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), requires the state to produce the chemist who actually performed the tests in this unique situation. The defendant's brief quotes that portion of *Roberts* which stated: "[I]n conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. See *Mancusi* v. *Stubbs,* 408 U.S. 204 [92 S. Ct. 2308, 33 L. Ed. 2d 293] (1972); *Barber* v. *Page,* 390 U.S. 719 [88 S. Ct. 1318, 20 L. Ed. 2d 255] (1968). See also *Motes* v. *United States,* 178 U.S. 458 [20 S. Ct. 993, 44 L. Ed. 1150] (1900); *California* v. *Green,* 399 U.S. [149], at 161–62, 165, 167, n.16 [90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970)]." (Footnote omitted.) Id., 65.

On the very next page, however, the court stated: "In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible

only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, *at least absent a showing of particularized guarantees of trustworthiness.*" (Footnote omitted.) (Emphasis added.) Id., 66. This clearly recognized the continued vitality of those hearsay exceptions which demonstrate "particularized guarantees of trustworthiness" of toxicological reports similar to those used in this case. See *State* v. *Cosgrove,* supra, 574, 575, 584; *State* v. *Reardon,* supra, 599–600. There was no violation of the defendant's sixth amendment constitutional right of confrontation in this unique case.

There is no error.

In this opinion the other judges concurred.