STATE OF CONNECTICUT *v.* REGINALD HORNE
(13841)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued May 2—decision released July 10, 1990

*G. Douglas Nash,* public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John Smriga,* assistant state's attorney, for the appellee (state).

COVELLO, J. This is an appeal from a decision of the Appellate Court affirming the defendant's conviction, following a consolidated trial by jury, of four counts of robbery in the first degree in violation of General

Statutes § 53a-134 (a) (4)[1] and modifying the judgment to reflect a conviction of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a).[2] The issue certified on appeal is: "Did the Appellate Court err in concluding that the trial of the defendant on four separate informations arising out of four incidents did not result in any substantial prejudice to the defendant because of the trial court's instructions that the jury should consider each case separately?" We conclude that the defendant was prejudiced by the joinder of the four cases for trial, and we therefore reverse the decision of the Appellate Court.

The four informations that were lodged against the defendant arose out of four separate criminal incidents in Bridgeport. Each involved a small retail shop where the victim was the sole employee present at the time of the incident. Each victim positively identified the defendant from a photographic array, in a lineup, and at trial.

The jury could reasonably have found the following further facts. See also *State* v. *Horne*, 19 Conn. App. 111, 562 A.2d 43 (1989). On February 25, 1986, the defendant entered the Together Jeans Shop clothing store, located at 3098 Main Street in Bridgeport. The defendant had been in the store on the previous day and told the owner that he would return for a certain pair of jeans. When the defendant returned the next day the owner gave him the jeans to take to a dress-

---

[1] General Statutes § 53a-134 provides in pertinent part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime . . . he . . . (4) displays . . . what he represents by his words or conduct to be a pistol . . . ."

[2] General Statutes § 53a-70 (a) provides in pertinent part: "A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such person . . . ."

This statute has been amended, effective October 1, 1989, by Public Acts 1989, No. 89-359.

ing room. As the owner turned to the cash register, the defendant placed a gun to his head and ordered him to go down into the cellar. The defendant then took approximately $90 from the store's cash box.

On March 25, 1986, the defendant entered the Gina Ice Cream Parlor, located on Main Street across the street from the Together Jeans Shop. The defendant ordered a banana split from the store employee who was standing behind the counter. As the employee turned around to make the banana split, the defendant told her not to turn around because he had a gun. The defendant then ordered the employee to continue making the banana split and to point out where the store's money was kept. When the employee picked up a knife to use in preparing the banana split, the defendant threatened to "blow [her] head off." The defendant then ordered the employee to unplug the phone and lie on the floor. He then took a cigar box containing approximately $30 and left the store.

On May 8, 1986, the defendant entered the Needle Niche Yarn Shop, located at 3073 Main Street. The defendant pretended to select a ball of yarn for purchase. As the owner wrote a sales slip, the defendant stepped around the counter and displayed a gun. He ordered the owner to remove the money from the cash register and to lie on the floor. The defendant then threatened to "blow [her] head off," and ordered the owner to crawl into the back room and show him her pocketbook. He took the owner's pocketbook, which contained $175, her driver's license and credit cards, and then removed the dial from the phone and left the store.

On June 12, 1986, the defendant entered the Uniform Boutique, located at 2738 Main Street. The Uniform Boutique was located approximately two and one-half blocks from the Needle Niche Yarn Shop. The sole per-

son present was a female store employee. The defendant displayed a gun and pointed it at the employee. The defendant then told the employee to take him to the safe. The defendant put the gun to the employee's head, placed his hand over her mouth, and walked her around the store. He then forced the victim to lie face down on the floor. The employee told the defendant that there was no safe, but indicated to the defendant where the cash box was located. The defendant took $25 from the cash box and a bank card from the employee's pocketbook. He then pulled the employee's slacks and underpants off and sexually assaulted her while holding her by the neck. When the defendant finished the assault, he again placed the gun to the employee's head, removed the telephone receiver, and exited the store through the back door.

The defendant was charged in four separate informations. With respect to the jeans shop case, the ice cream parlor case, and the yarn shop case, he was charged with robbery in the first degree in violation of General Statutes § 53a-134 (a) (4). With respect to the Uniform Boutique case, the defendant was charged with robbery in the first degree in violation of § 53a-134 (a) (4), sexual assault in the first degree in violation of General Statutes § 53a-70, and sexual assault in the first degree with a deadly weapon in violation of General Statutes (Rev. to 1985) § 53a-70a.[3]

---

[3] General Statutes (Rev. to 1985) § 53a-70a provided as follows: "(a) A person is guilty of sexual assault in the first degree with a deadly weapon when such person commits sexual assault in the first degree as provided in section 53a-70, and in the commission of such offense he uses or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a deadly weapon. No person shall be convicted of sexual assault in the first degree and sexual assault in the first degree with a deadly weapon upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information.

"(b) Sexual assault in the first degree with a deadly weapon is a class B felony and any person found guilty under this section shall be sentenced to a term of imprisonment of which five years of the sentence imposed may

The trial court, *Reilly, J.*, granted the state's pretrial motions to consolidate the four cases for trial, and denied the defendant's motions for four separate trials. The trial court, *Stodolink, J.*, denied the defendant's pretrial motion to sever the Uniform Boutique case from the other three cases, and denied the defendant's additional motions for severance that were made during trial. The defendant also asked the trial court to give a preliminary instruction on the risks of confusion between the cases. The trial court agreed to this request, but ultimately failed to do so.

In April and May, 1987, the consolidated prosecutions were tried to a jury. Each victim positively identified the defendant from a photographic array, in a lineup, and at trial. On May 21, 1987, the jury found the defendant guilty of the four robbery charges and of sexual assault in the first degree with a deadly weapon. After the verdict, the trial court dismissed the count alleging sexual assault in the first degree in violation of § 53a-70. On July 24, 1987, the defendant was sentenced to five years imprisonment on each count of robbery and to fifteen years on the sexual assault count, to run consecutively for a total effective term of thirty-five years imprisonment. On August 28, 1987, the defendant filed a consolidated appeal with the Appellate Court. The defendant asserted, as one of the grounds for appeal, the issue of the propriety of the trial court's rulings on the various motions to consolidate or to sever the four cases.

The Appellate Court affirmed the judgments as to the robberies in the first degree, but found error in the finding of guilty on the count alleging sexual assault in the first degree with a deadly weapon. *State* v. *Horne,* supra, 139–42. The Appellate Court set aside

not be suspended or reduced by the court." This statute was amended by Public Acts 1987, No. 87-246; see General Statutes (Rev. to 1989) § 53a-70a.

the judgment of that conviction and remanded the case with direction to render a judgment of acquittal on the charge of sexual assault in the first degree with a deadly weapon, and to modify the judgment to reflect a conviction of sexual assault in the first degree. Id., 146. The defendant then filed a petition for certification to this court. On November 29, 1989, we granted the defendant's petition in part and limited the appeal to the certified issue previously stated. *State* v. *Horne,* 213 Conn. 807, 568 A.2d 793 (1989).

The defendant argues on appeal that he was prejudiced because the jury, faced with the evidence of factually similar but legally unrelated cases, probably commingled the evidence in one case with another and was probably inflamed by the brutal and shocking sexual assault of one of the victims. The Appellate Court recognized the defendant's exposure to this prejudice, but affirmed the trial court's consolidation of the four cases on the ground that the trial court's one-time jury instruction[4] cured all potential prejudice. *State* v.

---

[4] Before addressing the substantive elements of the crimes involved, the trial court instructed the jury as follows: "Now in this case before you, as you've heard, there are four separate and distinct alleged incidents or transactions. Three of the cases are composed of three crimes. These four separate transactions have been consolidated by the court. In one of the cases, Mr. Horne is alleged to have committed a robbery in the first degree on February 25, 1986. That would be at the Together Jeans Shop. Also as part of the same trial, Mr. Horne is alleged to have committed a robbery in the first degree on March 25, 1986, and that would be the robbery of Miss Doris at the Gina's Ice Cream Store. Further, another file charges that Mr. Horne allegedly committed a robbery in the first degree on May 8, 1986. And that would be the charge as to the Needle Niche and the robbery of Mrs. Van Tassel. Additionally, a separate information charges that Mr. Horne allegedly committed a robbery in the first degree and a sexual assault in the first degree, two counts, on June 12, 1986, and that involved the Uniform Boutique and [the victim]. Hence we have four separate incidents that are alleged. Three of the incidents charging a separate crime each. That is robbery in the first degree. The fourth incident alleges three separate crimes and that would be the one involving the Uniform Boutique and [the victim]. You must consider each alleged incident separately, and be sure

*Horne,* supra, 19 Conn. App. 119. The defendant argues that this charge did not mitigate the prejudice and

to keep it distinct [and] separate from the others. The defendant's guilt or innocence in one alleged incident must not be considered or affect your verdict as to the guilt or innocence on the other alleged incidents. It is of the utmost importance that you keep each alleged incident separate and distinct from the others. In that regard I will repeat that in one of the cases Mr. Horne is alleged to have committed a robbery in the first degree on February 25, 1986. Mr. Kelly testified about that. Also as part of the same trial, Mr. Horne is alleged to have committed a robbery in the first degree on March 25, 1986. Miss Doris testified about that. Further, another file charges that Mr. Horne allegedly committed a robbery in the first degree on May 8, 1986. Mrs. Van Tassel testified about that. Additionally, a separate information charges Mr. Horne allegedly committed a robbery in the first degree and a sexual assault in the first degree, two counts, on June 12, 1986. And [the victim] testified about that incident itself. You must not mix the evidence of one incident with the evidence of another. You must consider the incidents separately and distinctly. The evidence in one incident must not affect your judgment or consideration in another incident. It is most important that you consider each alleged incident separately and distinctly from the other. Mr. Horne's guilt or innocence in one alleged incident must not be considered or affect your verdict as to the guilt or innocence in any of the other alleged incidents. The court has consolidated these four alleged incidents for the purpose of judicial efficiency. The court has attempted to see to it that the introduction of the testimony that was offered to you was done in an orderly fashion as could be and a logical fashion as to the alleged first incident and all that evidence in that one and then the second alleged incident and so on as to evidence. The purpose of this order was to assist you in keeping the four incidents separate and distinct. By virtue of the fact that there are four separate incidents pending against Mr. Horne, you must infer nothing from that consolidation. The matter of consolidation is the court's. Again, it is for the purpose of judicial efficiency and nothing more. This court is mindful of the natural tendency to conclude that a person must be guilty of one or more of the consolidated matters because there are so many. One or more of you may think that the total or overall effect of each offense may indicate Mr. Horne is guilty as to some or all of the offenses. If you think this way, you have merged the offenses and have [fallen] prey to exactly what you must not do. As I have indicated, these are four separate incidents. You cannot merge them together in any way whatsoever. Where incidents have been consolidated for trial, [the] prosecution's case against an accused is only as good as the evidence which underlies each specific and singular incident. The prosecution's case is not improved or any stronger because several cases are tried together in one trial as this one. To judge how good a prosecution's case is by the number of incidents there are claimed without analyzing each incident separately is not in accord with our system of government."

therefore, that the decision of the Appellate Court should be reversed. We agree.

I

The Appellate Court specifically determined that "this appeal must be viewed as involving 'factually similar but legally unrelated incidents.' [*State* v. *Greene,* 209 Conn. 458, 464, 551 A.2d 1231 (1988)]." Id., 117. " 'The most obvious example of possible prejudice is that, when the crimes, near in time, place and circumstance, are so similar although legally unconnected . . . there is danger that the jury will use the evidence of one crime to convict the defendant of the other crimes. See *Drew* v. *United States,* 331 F.2d 85, 89 (D.C. Cir. [1964]); 1 Wigmore, Evidence (3d Ed.) § 194.' *State* v. *Oliver,* 161 Conn. 348, 361, 288 A.2d 81 (1971)." *State* v. *King,* 187 Conn. 292, 299, 445 A.2d 901 (1982).

In *State* v. *King,* we resolved a conflict between the joinder provisions of our statutes and rules of practice, specifically, General Statutes § 54-57 and Practice Book § 829, by permitting, for the first time, the joinder of offenses that were unrelated to one another. We also noted that an improper joinder exposed the defendant to potential prejudice for two reasons. First, when several charges have been made against the defendant, " 'the jury may consider that a person charged with doing so many things is a bad [person] who must have done something, and may cumulate evidence against him . . .'; see *Drew* v. *United States,* [supra, 88] . . . ." *State* v. *King,* supra, 298–99. Second, the jury may have used the evidence of one case to convict the defendant in another case "even though that evidence would have been inadmissible at a separate trial." Id., 299. "[T]he danger that proof of one offense may be used to convict of a second offense, even though inadmissible at a separate trial, poses 'greater problems in trials involving similar offenses.' " Id., 302.

We have noted in later cases that joinder of cases that are factually similar but legally unconnected, such as those involved here, present the greatest danger that a defendant will be subjected to the " 'omnipresent risk . . . that "although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jury] of the accused's guilt, the sum of it will convince them as to all." *United States* v. *Lotsch,* 102 F.2d 35, 36 (2d Cir.), cert. denied, 307 U.S. 622, 59 S. Ct. 793, 83 L. Ed. 1500 (1939).' *State* v. *Boscarino,* [204 Conn. 714, 721–22, 529 A.2d 1260 (1987)]." *State* v. *Herring,* 210 Conn. 78, 95, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). "It is the defendant's burden on appeal to show that '[consolidation of his cases] resulted in substantial injustice,' and that any resulting prejudice was 'beyond the curative power of the court's instructions.' *State* v. *King,* supra, 302; *State* v. *Silver,* 139 Conn. 234, 240, 93 A.2d 154 (1952)." *State* v. *Boscarino,* supra, 721.

In assessing prejudice, a reviewing court should consider factors such as "(1) whether the charges involved 'discrete, easily distinguishable factual scenarios'; (2) whether the crimes were of a 'violent nature' or concerned 'brutal or shocking conduct' on the defendant's part; and (3) the 'duration and complexity of the trial.' [*State* v. *Boscarino,* supra,] 722–23." *State* v. *Herring,* supra, 95. "[I]f any or all of these factors were present, a reviewing court would have to decide whether the trial court's jury instructions cured any prejudice that might have occurred. [*State* v. *Boscarino,* supra,] 724." Id.

As to the first *Boscarino* factor, the Appellate Court concluded that the four cases did not involve "discrete, easily distinguishable factual scenarios." *State* v. *Horne,* supra, 19 Conn. App. 119. The Appellate Court noted that "[a]ll four [incidents] occurred within an

approximate time period of three and one-half months and within a few blocks of each other. All involved small retail establishments where the victim, the sole person on the premises, was threatened with a gun. Three of the victims were immobilized by being ordered to lie on the floor or go into the cellar, and two were threatened by the defendant that he would 'blow [their] head[s] off.' Thus, this factor favors a determination that severance [was] required. *State* v. *Boscarino,* supra, 721." Id., 119. The facial similarity between the four cases exposed the defendant to the potential prejudice that the jury would decide, cumulatively, that the defendant was responsible for a one-man crime wave of armed robberies of small stores and shops in the Bridgeport area.

The similarities were not so extensive, however, that the cases were legally connected. The Appellate Court specifically concluded that they were legally unrelated. Id., 117. The four cases differed factually, so that none could qualify as proof of another under the only theory available here, the narrowly defined "similar crimes or misconduct" exception. See *State* v. *Pollitt,* 205 Conn. 61, 68–72, 530 A.2d 155 (1987). The cases differed in the manner in which the robber initiated or "set up" each crime, the manner in which he treated each victim, the manner in which he handled the gun, and the manner in which he took the money. See, e.g., *State* v. *Esposito,* 192 Conn. 166, 173–74, 471 A.2d 949 (1984), cert. denied sub nom. *Pierson* v. *Connecticut,* 489 U.S. 1016, 109 S. Ct. 1131, 103 L. Ed. 2d 193 (1989); *State* v. *Williams,* 190 Conn. 104, 107–108, 459 A.2d 510 (1983); *State* v. *Ibraimov,* 187 Conn. 348, 353–54, 446 A.2d 382 (1982). The trial court acknowledged, in its remarks at sentencing, that "they were repeat crimes, although not signature crimes . . . ." See, e.g., *State* v. *Sierra,* 213 Conn. 422, 429–33, 568 A.2d 448 (1990).

As to the second *Boscarino* factor, the Appellate Court acknowledged that the sexual assault in the Uniform Boutique case confronted the jury with "brutal or shocking conduct." *State* v. *Horne,* supra, 19 Conn. App. 119–20, 124. The Appellate Court asserted, however, that the lack of physical harm accompanying the sexual assault and the lack of "sensationalize[d]" testimony distinguished the present case from *Boscarino.* Id., 119–20, 124. The defendant argues on appeal that the distinction is untenable and that the Uniform Boutique sexual assault inevitably had a great impact on the jury. We agree.

The brutality with which the assailant carried out the robbery and sexual assault in the Uniform Boutique case was very likely to have so aroused the passions of the jury that it interfered with their fair consideration of the other three cases. "We have acknowledged that evidence of a defendant's brutal or shocking conduct in one case may compromise the jury's ability to consider fairly the charges against him in other unrelated, but jointly tried cases. See *State* v. *King,* supra; *State* v. *Silver,* supra, 240–41; see generally *State* v. *Carter,* 189 Conn. 631, 644, 458 A.2d 379 (1983); *State* v. *Tinsley,* 180 Conn. 167, 171, 429 A.2d 848 (1980)." *State* v. *Boscarino,* supra, 723. The Uniform Boutique victim was a complete innocent who was forced at gunpoint behind the store counter and made to lie face down on the floor while the assailant took cash from the store's cash drawer and took a bank card from her purse. Then, as if the result of a casual and callous afterthought, the assailant stripped off her clothes and sexually assaulted her. By any barometer of human behavior, this assault constitutes "shocking conduct" that inevitably infected the jury's fair consideration of the other cases. It does not matter that the sexual assault was unaccompanied by serious physical injury. A sexual assault at gunpoint causes obvi-

ous psychological and emotional injuries. Such injuries often far exceed physical injuries in duration and in their impact on the victim's life. " 'Short of homicide, [sexual assault] is the "ultimate violation of self." It is also a violent crime because it normally involves force, or the threat of force or intimidation, to overcome the will and the capacity of the victim to resist. [Sexual assault] is very often accompanied by physical injury to the [victim] *and can also inflict mental and psychological damage.' Coker v. Georgia,* 433 U.S. 584, 597–98, 97 S. Ct. 2861, 53 L. Ed. 2d 982 (1977)." (Emphasis added.) *State* v. *Havican,* 213 Conn. 593, 599 n.3, 569 A.2d 1089 (1990). (Emphasis added.) Testimony adduced at trial from the victim illustrates the substantial emotional impact the sexual assault had on her. Her testimony was corroborated by the responding police officers and hospital personnel, and the trial court, at sentencing, noted that the sexual assault was committed under "very, very traumatic circumstances . . . ."

We note further that three of the four sexual assaults at issue in *Boscarino* involved no physical harm, and the fourth involved knife wounds that were intended not to harm but rather to terrorize the victim into submission. *State* v. *Boscarino,* supra, 717–18. In *Boscarino,* we held, nonetheless, that the trial court erred in consolidating the four cases because their factual similarities, although insufficient to make the evidence in each case admissible at the trial of the other cases, impaired the defendant's right to the jury's fair and independent consideration of the evidence in each case. Id., 723. "The prejudicial impact of joinder in these cases was exacerbated by the *violent nature* of the crimes with which the defendant was charged." (Emphasis added.) Id. Last, our assessment of the "brutality" of the crimes in *Boscarino* was not predicated on whether "the state in its presentation [or] the wit-

ness in her testimony sensationalized the sexual assault in any way." *State* v. *Horne,* supra, 19 Conn. App. 124. In both *Boscarino* and the case before us here, the prejudicial impact of the sexual assault arose from the plain exposition of the facts.

## II

Having established the scope and extent of the prejudice to which the defendant was exposed, we must next determine whether the jury instruction at the conclusion of the trial was adequate to mitigate that prejudice. The defendant argues that it was inadequate. We agree.

"Although we have frequently stated that, in the absence of contrary evidence, jurors are presumed to have followed the instructions of the trial court; see, e.g., *State* v. *Moye,* 199 Conn. 389, 396, 507 A.2d 1001 (1986); we have also held that 'a curative instruction is not inevitably sufficient to overcome the prejudicial impact of [inadmissible other crimes] evidence.' *State* v. *Tinsley,* supra, 170." *State* v. *Boscarino,* supra, 724–25. In *Boscarino,* the trial court repeatedly and explicitly instructed the jury to keep the evidence of the cases separate and distinct: "Before the state commenced its case-in-chief in each of the cases, and in its final instructions to the jury, the trial court admonished the jurors that the cases against the defendant were separate and that they should not allow the evidence in one case to influence their consideration of any other." Id., 719. In its final instructions, the trial court was explicit in telling the jury repeatedly to keep the evidence of each case separate. Id., 719 n.6.[5] The jury

---

[5] "In its final instructions the trial court told the jury that it should 'keep in mind, as I've repeatedly told you, to keep the cases separate and not to use your findings in any one case as a basis for findings in any of the other cases.' Later in its instructions, the court reinforced this admonition as follows:

'The Court: I will remind you that during the course of the trial certain evidence was admitted for you to consider in each of these four separate

instruction in the present case falls far short of the *Boscarino* instructions, wherein the jury was admonished and instructed five times: four times during trial, at the commencement of each case-in-chief; and once in the final instruction. Yet, despite the thoroughness of the trial court's admonitions to the jury in *Boscarino,* we concluded that the instructions nonetheless were inadequate to mitigate the prejudice to which the defendant had been subjected by joinder of the four cases.

When it consolidated the four cases, the trial court of necessity required the jury to undertake the heavy burden of listening to four separate yet somewhat similar cases against the defendant, to ignore their obvious interrelations and overlappings, and to resist the accompanying tendency to cumulate the evidence. The trial court also asked the jury somehow to ignore the obviously inflammatory nature and impact of the sexual assault. It failed, however, to instruct the jury about the difficulties of this assignment at the outset of the trial, despite its initial agreement to the defendant's

files or incidents, including exhibits and you are instructed that that particular evidence was not to be considered by you in connection with any of the other files or incidents. You will, of course, remember this and apply this instruction to the evidence in each of these four cases which are being tried together, but which must be considered separately by you.

'Your verdicts on the counts in each of these four cases or incidents will be based solely on the evidence which was admitted for your consideration with respect to that particular incident or case. Where evidence was admitted on one incident but not any of the others, you must consider it only in arriving at your conclusion of guilt or innocence with respect to the incident in connection with—in connection with which it was admitted and disregard it in deciding upon the innocence or guilt of the defendant on any of the counts in any of the—on any of the counts in any of the other incidents.

'On the other hand, certain evidence introduced by the defendant, particularly relative to his mental and physical condition and characteristics and including those exhibits prefixed by the Roman numeral five, have applicability to all the incidents and counts and may be so considered by you.' " *State* v. *Boscarino,* 204 Conn. 714, 719–20 n.6, 529 A.2d 1260 (1987).

request that the court make such an instruction. " 'The government should not have the windfall of having the jury be influenced by evidence against a defendant which, as a matter of law, they should not consider but which they cannot put out of their minds.' *Delli Paoli* v. *United States,* 352 U.S. 232, 248, 77 S. Ct. 294, 1 L. Ed. 2d 278 (1957) (dissenting opinion), cited with approval in *Bruton* v. *United States,* [391 U.S. 123, 129, 88 S. Ct. 1627, 20 L. Ed. 2d 476 (1968)]." *State* v. *Tinsley,* supra, 171.

The trial court may, on retrial, in the careful exercise of its discretion, consolidate the three robberies that did not involve the sexual assault if the trial court issues adequate instructions to the jury, at the beginning and during the course of the proceedings as warranted, to keep the facts of each robbery separate, thereby minimizing the risk that the jury would commingle the facts.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to set aside the judgments of the trial court and remand the cases to that court for new trials.