STATE OF CONNECTICUT *v.* REGINALD HORNE
(6339)

BORDEN, DALY and FOTI, Js.

Argued January 31—decision released July 11, 1989

*G. Douglas Nash,* assistant public defender, for the appellant (defendant).

*Richard F. Jacobson,* with whom, on the brief, were *John Smriga,* assistant state's attorney, and *Donald A. Browne,* state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from four separate judgments, involving four convictions of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), and one conviction of sexual assault in the first degree with a deadly weapon in violation of General Statutes (Rev. to 1987) § 53a-70a. The judgments arose out of four separate informations that the court consolidated for trial. The defendant claims that the convictions should be reversed for the following reasons: (1) the court erred in consolidating the four cases; (2) the court erred in admitting into evidence, in violation of the court's pretrial disclosure order, a written statement given by one of the defendant's witnesses; (3) the state committed prosecutorial misconduct in introducing certain evidence and in making certain final arguments; (4) the court erred in precluding the defend-

ant's alibi witness from testifying in one of the cases; (5) the court erred in its instructions to the jury on the offense of robbery in the first degree; (6) the court erred in its instructions to the jury on the offense of larceny as part of the offense of robbery in the first degree; (7) the conviction of sexual assault in the first degree with a deadly weapon was based on legally insufficient evidence; and (8) the court erred in its instructions to the jury on the offense of sexual assault in the first degree with a deadly weapon. We find error in part.

The four informations arose out of four separate criminal incidents in Bridgeport. Each involved a small retail shop where the victim was the sole employee present at the time of the incident. Each victim positively identified the defendant from a photo array, in a lineup and at trial. The jury could reasonably have found the following facts.

### THE JEANS SHOP CASE

On February 25, 1986, at approximately 4 p.m., the defendant entered a clothing store known as the Together Jeans Shop, located at 3098 Main Street. On the previous day, the defendant had been in the store and selected two pairs of jeans, telling the owner, Michael Kelly, that he would be back for them. He returned the next day, and Kelly gave him the jeans to take to a dressing room. As Kelly turned to the cash register, the defendant placed a gun to Kelly's head and instructed him to go to the cellar. Kelly picked up the hatchway door and entered the cellar. The defendant took approximately $90 from the store's cash box.

### THE ICE CREAM PARLOR CASE

On March 25, 1986, at approximately 9 p.m., the defendant entered the Gina Ice Cream Parlor, located on Main Street across the street from the Together Jean Shop. Joelle Doris, the store's employee, was

standing behind the counter. The defendant ordered a banana split. As Doris turned around to make the banana split, the defendant told her not to turn around because he had a gun. She looked directly at him and saw the gun. The defendant told her to continue to make the banana split and to point to the store's money. When Doris picked up a knife to use in making the banana split, the defendant threatened to "blow [her] head off." The defendant then ordered Doris to unplug the phone and lie on the floor. He then took a cigar box containing approximately $30 and left.

### THE YARN SHOP CASE

On May 8, 1986, at approximately 10 a.m., the defendant entered the Needle Niche Yarn Shop, located at 3073 Main Street. Marjorie Van Tassel, the owner, was in the store. The defendant purported to select a ball of yarn to purchase. As Van Tassel wrote a sales slip, the defendant stepped around the counter and displayed a gun. He told Van Tassel to lie on the floor and remove money from the cash register. He then threatened to "blow [her] head off," and ordered her to crawl into the back room and show him her pocketbook. She did so, and he took her pocketbook which contained $175, her driver's license and credit cards. He then removed the dial from the phone and left.

### THE UNIFORM BOUTIQUE CASE

On June 12, 1986, at approximately 9:40 a.m., the defendant entered the Uniform Boutique, located at 2738 Main Street, approximately two and one-half blocks from the Needle Niche Yarn Shop. The defendant pulled a gun and pointed it at the victim, the sole employee present. The defendant told the victim to take him to the safe. He put the gun to her head, and with his hand over her mouth walked her around the store. The defendant then made the victim lie face down on the floor. The victim told the defendant that there was

no safe, but indicated to him where the cash box was. The defendant took $25 from the cash box and a bank card from the victim's pocketbook. The defendant then pulled the victim's slacks and underpants off, and sexually assaulted her while he held her around the neck. After he finished, he put the gun to her head again. He then removed the telephone receiver and left through the back door.

The defendant was charged in four separate informations. With respect to the jeans shop case, the ice cream parlor case and the yarn shop case, he was charged with robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).[1] With respect to the Uniform Boutique case, he was charged with robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), sexual assault in the first degree in violation of General Statutes § 53a-70,[2] and sexual assault in the first degree with a deadly weapon in violation of General Statutes (Rev. to 1987) § 53a-70a.[3]

[1] General Statutes § 53a-134 provides in pertinent part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime . . . he . . . (4) displays . . . what he represents by his words or conduct to be a pistol . . . ."

[2] General Statutes § 53a-70 (a) provides in pertinent part: "A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such person . . . ."

[3] General Statutes (Rev. to 1987) § 53a-70a provides as follows: "(a) A person is guilty of sexual assault in the first degree with a deadly weapon when such person commits sexual assault in the first degree as provided in section 53a-70, and in the commission of such offense he uses or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a deadly weapon. No person shall be convicted of sexual assault in the first degree and sexual assault in the first degree with a deadly weapon upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information. (b) Sexual assault in the first degree with a deadly weapon is a class B felony and any person found guilty under this section shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court." This statute was amended by Public Acts 1987, No. 87-246. See General Statutes (Rev. to 1989) § 53a-70a.

The trial court, *Reilly, J.,* granted the state's pretrial motions to consolidate the four cases for trial, and denied the defendant's motions for four separate trials. The trial court, *Stodolink, J.,* also denied the defendant's pretrial motion to sever the Uniform Boutique case from the other three cases, and denied the defendant's additional motions for severance made during the trial. The jury found the defendant guilty of the four robbery charges and of sexual assault in the first degree with a deadly weapon. Judgments of conviction were rendered accordingly, and this consolidated appeal followed.

I

The defendant first claims that the trial court erred in joining the four cases for trial. We disagree.

We first note that the state in its brief in this court claimed that, because the four cases involved signature crimes, the evidence of each would have been admissible on the issue of identity in the separate trials of the others. The state specifically abandoned that claim, however, at oral argument. It no longer argues that the four separate incidents constituted signature crimes, nor does the state claim that the evidence of any of the separate crimes would have been admissible in the trials of the others on the basis that it showed a common scheme, intent, malice, motive or opportunity. See *State* v. *Greene,* 209 Conn. 458, 464–65, 551 A.2d 1231 (1988). The state's ultimate appellate position is consistent with its position at trial, where it made no claim that evidence of any one crime charged was admissible to prove any other crime.

Thus, this appeal must be viewed as involving "factually similar but legally unrelated incidents." Id., 464. In such a case, " 'there is danger that the jury will use the evidence of one crime to convict the defendant of the other crimes.' " *State* v. *King,* 187 Conn. 292, 299,

445 A.2d 901 (1982); but see *State* v. *Pollitt,* 205 Conn. 61, 68, 530 A.2d 155 (1987) (where evidence of one offense admissible at trial for another, defendant not ordinarily prejudiced by joinder for single trial); *State* v. *Greene,* supra, 465 (joinder of two separate cases permitted because evidence cross-admissible as showing common scheme). The absence of cross-admissibility does not, however, mandate severance. In such a case, "[a] trial court will not have manifestly abused its discretion in denying severance if the state's orderly presentation of evidence has prevented confusion of the jury and has enabled the jury to consider the evidence relevant to each charge separately and distinctly." *State* v. *Pollitt,* supra.

Recently, our Supreme Court, in *State* v. *Herring,* 210 Conn. 78, 95, 554 A.2d 686 (1989), further synthesized the proper analysis to be employed in a case involving factually similar but legally unrelated crimes. The court reexamined "the undeniable tension between the need to conserve judicial resources by consolidating cases and the defendant's right to a fair trial. In *State* v. *Boscarino,* [204 Conn. 714, 721, 529 A.2d 1260 (1987)], we held that the trial court had erred in joining four separate counts of sexual assault in the first degree against the defendant because the joinder worked a ' "substantial injustice". . . "beyond the curative power of the court's instructions." ' We there discussed several factors that a trial court should consider in making its determination whether severance is required in order to avoid the 'omnipresent risk . . . that "although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jury] of the accused's guilt, the sum of it will convince them as to all." *United States* v. *Lotsch,* 102 F.2d 35, 36 (2d Cir.), cert. denied, 307 U.S. 622, 59 S. Ct. 793, 83 L. Ed. 1500 (1939).' *State* v. *Boscarino,* supra, 721–22. These factors include: (1) whether the

charges involved 'discrete, easily distinguishable factual scenarios'; (2) whether the crimes were of a 'violent nature' or concerned 'brutal or shocking conduct' on the defendant's part; and (3) the 'duration and complexity of the trial.' Id., 722–23. We held that if any or all of these factors were present, a reviewing court would have to decide whether the trial court's jury instructions cured any prejudice that might have occurred. Id., 724." *State* v. *Herring,* supra.

Applying these factors to this case, we conclude that the trial court did not manifestly abuse its wide discretion by joining the cases for trial. Although two of the three factors identified in *Herring* were present, we are persuaded that the trial court's apt and thorough curative instructions were sufficient to "tip the balance in favor of a finding that the defendant's right to a fair trial has been preserved." Id., 97.

We begin our inquiry with the defendant's claim that the court abused its manifest discretion by joining all four cases for trial, and that the defendant was thus entitled to four separate trials. This claim is without merit.

It is true that there were substantial factual similarities among the four incidents that cannot be properly characterized as involving " 'discrete, easily distinguishable factual scenarios.' " Id., 95, quoting *State* v. *Boscarino,* supra, 722–23. All four occurred within an approximate time period of three and one-half months and within a few blocks of each other. All involved small retail establishments where the victim, the sole person on the premises, was threatened with a gun. Three of the victims were immobilized by being ordered to lie on the floor or go into the cellar, and two were threatened by the defendant that he would "blow [their] head[s] off." Thus, this factor favors a determination that severance [was] required. *State* v. *Boscarino,* supra, 721.

On the other hand, with the exception of the sexual assault in the Uniform Boutique case, the crimes were not violent, brutal or shocking. Although a gun was brandished in each case, no physical harm was inflicted on any victim other than in the Uniform Boutique case. Cf. *State* v. *Herring,* supra, 97, ("[w]hile any murder involves violent and upsetting circumstances, it would be unrealistic to assume that any and all such deaths would inevitably be so 'brutal and shocking' that a jury, with proper instructions to treat each killing separately, would necessarily be prejudiced by a joint trial)."

Furthermore, the jury heard eight days of testimony with twenty-seven witnesses taking the stand. Our Supreme Court held that the trial in *State* v. *Herring,* supra, 97, where the jury heard eight days of testimony from twenty-three witnesses, did not involve undue complexity or risk of confusion by the jury. In this case, that risk was minimized by the orderly presentation of the state's evidence.

Moreover, although on appeal the defendant renews his pretrial claim that all four charges should have been tried separately, when he moved at trial to sever the Uniform Boutique case from the other three cases he conceded that under our law those cases could properly be joined for trial.[4] This concession certainly undercuts his appellate claim. Cf. *State* v. *Chapman,* 16 Conn. App. 38, 48, 546 A.2d 929 (1988).

Having determined that one of the prejudicial factors identified in *Herring* was present, we consider the court's instructions and their likely effect on the jury. The linchpin of the joinder issue in a case such as this

[4] Referring to the three robbery cases other than the Uniform Boutique case, the defendant's counsel stated to the court: "Under the state of the law in this particular jurisdiction, it's pretty clear that those three files could be tried together . . . [a]nd [the] motion to sever would fall . . . on fairly tenuous grounds."

is "whether the trial court's jury instructions cured any prejudice that might have occurred." *State* v. *Herring,* supra, 95. We are persuaded that these jury instructions were sufficient to do so.

The court's instructions were particularly thorough and extensive.[5] The court referred to the "four sepa-

[5] Before addressing the substantive elements of the crimes charged, the court charged the jury as follows: "Now in this case before you, as you've heard, there are four separate and distinct alleged incidents or transactions. Three of the cases are composed of three crimes. These four separate transactions have been consolidated by the court. In one of the cases, Mr. Horne is alleged to have committed a robbery in the first degree on February 25, 1986. That would be at the Together Jeans Shop. Also as part of the same trial, Mr. Horne is alleged to have committed a robbery in the first degree on March 25, 1986 and that would be the robbery of Miss Doris at the Gina's Ice Cream Store. Further, another file charges that Mr. Horne allegedly committed a robbery in the first degree on May 8, 1986. And that would be the charge as to the Needle Niche and the robbery of Mrs. Van Tassel. Additionally, a separate information charges that Mr. Horne allegedly committed a robbery in the first degree and a sexual assault in the first degree, two counts, on June 12, 1986, and that involved the Uniform Boutique and [the victim]. Hence we have four separate incidents that are alleged. Three of the incidents charging a separate crime each. That is robbery in the first degree. The fourth incident alleges three separate crimes and that would be the one involving the Uniform Boutique and [the victim]. You must consider each alleged incident separately, and be sure to keep it distinct [and] separate from the others. The defendant's guilt or innocence in one alleged incident must not be considered or affect your verdict as to the guilt or innocence on the other alleged incidents. It is of the utmost importance that you keep each alleged incident separate and distinct from the others. In that regard I will repeat that in one of the cases Mr. Horne is alleged to have committed a robbery in the first degree on February 25, 1986. Mr. Kelly testified about that. Also as part of the same trial, Mr. Horne is alleged to have committed a robbery in the first degree on March 25, 1986. Miss Doris testified about that. Further, another file charges that Mr. Horne allegedly committed a robbery in the first degree on May 8, 1986. Mrs. Van Tassel testified about that. Additionally, a separate information charges Mr. Horne allegedly committed a robbery in the first degree and a sexual assault in the first degree, two counts, on June 12, 1986. And [the victim] testified about that incident itself. You must not mix the evidence of one incident with the evidence of another. You must consider the incidents separately and distinctly. The evidence in one incident must not affect your judgment or consideration in another incident. It is most important that you consider each alleged incident separately and

rate and distinct alleged incidents or transactions," and repeatedly instructed the jury that it must consider each incident separately from the others, stressing that to do so was of the "utmost importance," and "most important." The court further cautioned the jury that it "must not mix the evidence of one incident with the evidence of another," and that its judgment on one must not affect its judgment on another. The court emphasized that the cases were consolidated by the court for "judicial efficiency and nothing more," and that the jury must not draw any inference from the consolidation. Further, the court directly addressed the "natural tendency to conclude that a person must be guilty of one or more of the consolidated matters because there are so many," and warned that "[i]f you think this way you have merged the offenses and have

distinctly from the others. Mr. Horne's guilt or innocence in one alleged incident must not be considered or affect your verdict as to the guilt or innocence in any of the other alleged incidents. The court has consolidated these four alleged incidents for the purpose of judicial efficiency. The court has attempted to see to it that the introduction of the testimony that was offered to you was done in an orderly fashion as could be and a logical fashion as to the alleged first incident and all that evidence in that one and then the second alleged incident and so on as to evidence. The purpose of this order was to assist you in keeping the four incidents separate and distinct. By virtue of the fact that there are four separate incidents pending against Mr. Horne, you must infer nothing from that consolidation. The matter of consolidation is the court's. Again, it is for the purpose of judicial efficiency and nothing more. This court is mindful of the natural tendency to conclude that a person must be guilty of one or more of the consolidated matters because there are so many. One or more of you may think that the total or overall effect of each offense may indicate Mr. Horne is guilty as to some or all of the offenses. If you think this way, you have merged the offenses and have [fallen] prey to exactly what you must not do. As I have indicated, these are four separate incidents. You cannot merge them together in any way whatsoever. Where incidents have been consolidated for trial, [the] prosecution's case against an accused is only as good as the evidence which underlies each specific and singular incident. The prosecution's case is not improved or any stronger because several cases are tried together in one trial as this one. To judge how good a prosecution's case is by the number of incidents there are claimed without analyzing each incident separately is not in accord with our system of government."

[fallen] prey to exactly what you must not do." The court instructed the jury that the state's case "is only as good as the evidence which underlies each specific and singular incident," and that to judge the cases "without analyzing each incident separately is not in accord with our system of government."

Later in its charge, the court reminded the jury that although the same law of robbery applied to each of the incidents, "you must apply it separately in each of the four incidents and not . . . run them together because we have tried them together." Finally, at the end of its instructions the court reminded the jury "to treat [each] incident separately," and to put the state to its burden of proof separately on each incident.

We next consider the defendant's claim that the court erred by denying his motion to sever the Uniform Boutique case from the other cases. Although the resolution of that claim presents a closer case for severance, we conclude nonetheless that the court's instructions were so thorough and pointed that they "cured any prejudice that might have occurred." State v. Herring, supra, 95.

In this connection, we first note that the court, Stodolink, J., carefully considered the question of severing the Uniform Boutique case both immediately before trial, when the defendant first moved to sever that case, and during the trial, when the defendant renewed his motion.[6] The court articulated its reasons for denying the defendant's motions for severance, namely, that the robbery and sexual assault were part of one con-

---

[6] This motion was made after the victim had testified regarding the robbery, the sexual assault and her subsequent pretrial identification of the defendant. This testimony was given in a hearing held on the defendant's motion to suppress the victim's identification of him. Thus, when the trial court denied the defendant's midtrial severance motion, it had the full benefit of the victim's testimony, which was later repeated to the jury without substantial change.

tinuous transaction, that there was no physical abuse involved beyond the act of vaginal intercourse, and that the evidence of that conduct would not unduly inflame the jury and deprive the defendant of a fair trial.

It is clear from this record that the court exercised its discretion to join the cases after a thorough consideration of the pertinent factors. Thus, although the ultimate question of severance involves the likely curative effect of the court's instructions on the jury; id.; the care with which the court exercised its discretion affects the determination of whether the court "manifestly abused its discretion in denying severance." *State* v. *Pollitt,* supra.

As we indicated above, the four incidents contained so many factual similarities that they could not be properly viewed as discrete, easily distinguishable factual scenarios. *State* v. *Herring,* supra, 96. Thus, this factor favors a determination of severance. *State* v. *Boscarino,* supra, 721.

Furthermore, although the sexual assault in this case constituted a violent and brutal crime, neither the state in its presentation nor the victim in her testimony sensationalized the sexual assault in any way. As the trial court found, there was no physical harm to the victim beyond the act of vaginal intercourse. Thus, unlike that in *Boscarino,* the testimony regarding the sexual assault was not "of such a violent and shocking nature, both in regard to physical violence and sexual derangement, as impermissibly to increase the risk of inflaming the jury." *State* v. *Herring,* supra, 96, referring to *State* v. *Boscarino,* supra.

Moreover, the trial was neither unduly long nor complex, and the evidence of the four incidents was presented in a logical, orderly fashion. Thus, there was little risk that the jury would be confused by the evidence.

Finally, as we noted above, the trial court's instructions in this case were so commendably thorough that we are persuaded that they "cured any prejudice that might have occurred." *State* v. *Herring,* supra, 95; see footnote 5, supra. The court repeatedly admonished the jury to consider the cases separately. It emphasized that the matter of joinder was solely for the purpose of judicial economy. It pointedly reminded the jurors that if any of them determined guilt in any one case as a result of "the total or overall effect" of the evidence, "you have merged the offenses and have [fallen] prey to exactly what you must not do." It warned the jury that to judge the case "by the number of incidents there are claimed without analyzing each incident separately is not in accord with our system of government." It returned to this theme later in its charge, when it instructed the jury on the elements of robbery, and it concluded by reminding the jury that it must hold the state to its burden of proof in each case separately from the others.

## II

The defendant next claims that the court erred by admitting into evidence a written statement by the defendant's witness, Tania Barham, in violation of the court's pretrial disclosure order. We disagree.

In a pretrial disclosure motion in each case, the defendant sought an order of disclosure of, inter alia, "[a]ny alleged prior acts of misconduct (i.e. violations of the Penal Code) by the defendant that the state intends to offer at trial." The defendant explicitly relied on, inter alia, the trial court decision in *State* v. *Acquin,* 34 Conn. Sup. 152, 381 A.2d 239 (1977) *(Alexander, J.).*[7]

[7] In *State* v. *Acquin,* 34 Conn. Sup. 152, 153–54, 381 A.2d 239 (1977), the trial court held that "basic fairness and the due process requirement of adequate notice" required that "where the state seeks to prove that an accused has been guilty of additional crimes and misconduct on other occa-

This was one of twenty-eight requests that the defendant made in his motion for disclosure and production. The court, *Freedman, J.,* entered the following order in response to the defendant's entire motion: "Granted in accordance with *State* v. *Capote.*"

Barham, the defendant's girlfriend, testified under direct examination that the defendant's character was such that he would not sexually force himself on a woman. On cross-examination, the state introduced, over the defendant's objection, a written statement that Barham had given to the police on July 19, 1986, in which she stated that approximately three months earlier she had seen the defendant in possession of a small silver handgun that the defendant claimed at the time to be holding for someone else. It is clear from the record that the court admitted this statement for the limited purpose of impeaching Barham's character testimony regarding the defendant.

It is important to note what the defendant does not claim on appeal. He does not claim that the statement was not proper impeachment material with regard to Barham's character testimony. He does not claim that its prejudicial effect outweighed its probative value. Nor does he claim that Barham's statement falls within any rule of practice or constitutional provision entitling him to its discovery as a matter of right. Compare, e.g., Practice Book §§ 741 and 750. His sole claim is that it was inadmissible because the state's failure to disclose it to him violated the court's pretrial disclosure order.

sions, although such evidence is otherwise admissible under some exception to the general exclusionary rule, it shall not be received unless within ten days before trial the state furnishes the defendant with a written statement of the offenses it intends to show he committed, described with regard to the nature, date and place of occurrence. This shall not apply to the following: (1) offenses which are part of the immediate episode, (2) offenses for which the defendant has been previously prosecuted, and (3) offenses offered to rebut the defendant's evidence of good character." We express no view on the propriety of this holding.

The defendant's argument misses the mark. The defendant has simply misread this record, erroneously substituting the basis of his discovery claim for the basis of the court's ruling thereon. He asserts in his brief that the trial court, *Freedman, J.,* "ordered this paragraph [of his motion for disclosure and production], 'Granted, Pursuant to *State* v. *Acquin,*' in each case." This is not what the trial court did. It ordered the defendant's entire twenty-eight paragraph motion for disclosure and production "[g]ranted in accordance with *State* v. *Capote.*" We find no reported case either in the Supreme Court, this court, or the Superior Court under that name.

Thus, the contours and limits of the trial court's pretrial disclosure order are not defined by this record, and we have no basis on which to indicate that the court in its evidentiary ruling overrode that order. Furthermore, even if we were to measure this trial court's evidentiary ruling against that of the trial court in *State* v. *Acquin,* supra, we would conclude that it fell within *Acquin's* third exception, namely, offenses offered to rebut the defendant's evidence of good character.

### III

The defendant next claims, in two separate assignments of error that we consider together, that the state committed prosecutorial misconduct (1) by introducing into evidence Barham's written statement regarding the defendant's earlier possession of a gun, and by referring to that statement in its final argument as substantive evidence bearing on guilt rather than as evidence impeaching Barham's credibility, and (2) by arguing to the jury that it should cumulate the evidence of the separate crimes in its determinations of guilt or innocence. Because he did not raise these claims in any way at trial, the defendant claims that they are review-

able under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). We conclude, however, that they do not qualify for *Evans* review.

While the defendant has labeled these claims as constitutional and thus has met the first prong of *Evans* review; *State* v. *DeMayo,* 18 Conn. App. 297, 302, 557 A.2d 571 (1989); our limited review of the record discloses that they are not truly of constitutional proportions. Id. Review of unpreserved claims of prosecutorial misconduct has been reserved for instances where the claimed misconduct was part of a pattern of misconduct repeated throughout the trial or was blatantly egregious. *State* v. *Williams,* 204 Conn. 523, 537, 529 A.2d 653 (1987); *State* v. *Reddick,* 15 Conn. App. 342, 354–55, 545 A.2d 1109, cert. denied, 209 Conn. 819, 551 A.2d 758 (1988). The isolated incidents cited by the defendant simply do not fall within either of those categories. We therefore decline to review these claims further.

## IV

The defendant's next claim is that the court erred by precluding his sole alibi witness in the ice cream parlor case from testifying. This claim is without merit.

The defendant's claim arises from the following procedural context. On February 3, 1987, the state filed in each case a request for notice of alibi pursuant to Practice Book § 763.[8] On April 27, 1987, the defendant filed a notice of alibi in the jeans shop case indicat-

---

[8] Practice Book § 763 provides: "Upon written demand filed by the prosecuting authority stating the time, date, and place at which the alleged offense was committed, the defendant shall file within ten days, or at such other time as the judicial authority may direct, a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi."

ing that Barham would be an alibi witness regarding that case. The defendant did not file any such notices in the other three cases.

The trial began on April 22, 1987, when the court addressed pretrial motions. On May 4, 1987, the state began to present its evidence in the jeans shop case, the first of the four successive cases to be tried together.

On May 5, 1987, when the evidence in the jeans shop case was near conclusion, the defendant filed a notice of alibi for the ice cream parlor case, indicating that Charles Watson would testify that, on March 25, 1986, at approximately 8 p.m., he and the defendant attended a high school basketball game in West Haven. The state objected on the ground that the defendant had not complied with Practice Book § 763 in a timely fashion, and requested that Watson be precluded from testifying as an alibi witness. During the course of the argument on the state's request, the defendant disclosed to the court that he had been tried in January, 1987, for another series of robberies and that Watson was in contact with his counsel's office at that time. The defendant also stated to the court that he had talked to Watson approximately three weeks earlier and also on the previous day, that he had reminded Watson that they went to several basketball games in February, March and April, 1986, and that he asked Watson to check the dates of those games.

The court granted the state's request to bar Watson as an alibi witness. The court found that the defendant had not established good cause for a late filing under Practice Book § 763, because the defendant was obligated, upon the filing of the state's demand for notice of alibi, "to search his mind for those who might be available to furnish alibi evidence," and it further found that Watson was known to the defendant as one who had such information.

The defendant mounts a four-pronged attack on the court's ruling.[9] He first argues that he did not violate the requirements of Practice Book §§ 762 through 766, regarding notices of alibi witnesses, because the court never ruled on the state's demand for notice of alibi. This argument is without merit.

It is clear from Practice Book § 763; see footnote 8, supra; that the obligation of the defendant to respond to the state's process is self-executing. This is apparent from the language of Practice Book § 763 that "[u]pon written demand filed by the prosecuting authority . . . the defendant shall file within ten days . . . a written notice of his intention to offer a defense of alibi." The only necessity for judicial intervention in this self-executing process arises if the defendant requests permission to file such a notice "at such other time as the judicial authority may direct." This interpretation is also consistent with Practice Book § 767, which provides that "[f]or good cause shown, the judicial authority may grant an exception to any of the requirements of Secs. 763 through 766."[10] Indeed, it is clear that the defendant interpreted the Practice Book rules as self-executing by responding without a court order in the jeans shop case.

[9] The defendant also claims that the court's ruling violated his constitutional rights to present a defense, to compulsory process, and to the reciprocity regarding alibi witnesses that is required by due process of law. Although the bulk of the defendant's analysis in his briefs focuses on the claimed violations of the rules of practice, we have fully considered, and reject, his constitutional claims. In the context of this case, the right to compulsory process is grounded in the due process right to present a defense. *Taylor* v. *Illinois,* 484 U.S. 400, 408, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988). Whether exclusion of a late-disclosed alibi witness is an appropriate sanction depends on a balancing process. Id., 414–15. Our discussion in the text; infra, 132; disposes of this constitutional claim. Similarly, there was no violation of the reciprocity required by due process of law. See text, infra, 134.

[10] *State* v. *Burns,* 194 Conn. 469, 478–79, 481 A.2d 1077 (1984), on which the defendant relies, is not to the contrary. In that case, the state filed its demand for notice of alibi and compliance was ordered by the trial court. Id., 479. The question of whether such action by the trial court was necessary was not involved in the decision.

The defendant next argues that he established "good cause" under Practice Book § 767 for the late notice because the alibi and witness were newly discovered, and his notice was filed promptly after their discovery. The defendant's argument is premised on the notion that "the defendant had no knowledge he had a legitimate defense until the Watson library check so he could not make an earlier disclosure." This argument founders on the record of this case.

That record discloses that the defendant was arrested on July 18, 1986, less than four months after the ice cream parlor case robbery on March 25, 1986. On July 21, 1986, he was presented in Part B of the Superior Court on an information that charged him with a robbery on March 25, 1986, and the case was transferred to Part A. On August 12, 1986, he was presented in Part A on an information that specified that the robbery occurred "at or about 8:45 p.m." on March 25, 1986. Thus, within a few months of the robbery, he was well aware of the precise date and time of the offense with which he was charged, and it was incumbent on him then to determine whether there were any witnesses who could testify to his whereabouts on that date and at that time. Furthermore, Watson was in contact with the defendant's counsel when he was tried for other robberies in January, 1987, and the defendant was in contact with Watson three weeks before he filed his alibi notice. Simply because the defendant waited until mid-April, 1987, to ask Watson to verify the date of the basketball game, when the defendant had known for approximately eight months that he was charged with a robbery at 8:45 p.m. on March 25, 1986, and when the state had filed its demand for alibi notice in early February, 1987, does not make either Watson or his testimony "newly discovered."

The defendant next argues that the court erred by employing the sanction of exclusion rather than some

lesser sanction. Under the circumstances of this case, we conclude that the court did not abuse its discretion in ruling as it did.

The decision whether to exclude the testimony of an alibi witness where the defendant has failed to comply with the disclosure rules is within the sound discretion of the trial court and turns on the facts of each case. *State* v. *Sanchez,* 200 Conn. 721, 733, 513 A.2d 653 (1986). The " 'court must weigh the need for exclusion against the defendant's right to present a defense.' " Id., quoting *State* v. *Boucino,* 199 Conn. 207, 214, 506 A.2d 125 (1986). The relevant factors include whether the violation was technical or substantial; the time of disclosure; the reason for the violation; the degree of prejudice to the parties; whether any prejudice might be cured by a continuance; and the overall desirability of a continuance. *State* v. *Sanchez,* supra.

Applying these factors, we cannot conclude that the trial court abused its discretion in excluding Watson as an alibi witness. The violation was substantial and not technical, in that the timing of the disclosure came within approximately three months after the state's demand, after trial had begun on all four of the cases, and as the state was concluding its evidence in the jeans shop case and was about to begin its evidence in the ice cream parlor case. There was no satisfactory reason established for the violation. Although the defendant was prejudiced by the court's determination, that prejudice was balanced, at least somewhat, by the fact that the state would have had to mount a late investigation of the alibi witness and his testimony. Although a continuance was a possibility, the court was within its discretion in concluding that it would not have been desirable because there was no indication of the likely length of any continuance and because it would not have been wise to interrupt the trial of the four joined cases and risk confusing the jury.

The defendant's final argument on this claim is that the court erred by not relieving him from the constraints of Practice Book § 763 because the state had violated an earlier disclosure order by the court. We disagree.

On August 27, 1986, the court granted the defendant's motion for disclosure and production in all four cases. On December 5, 1986, the state filed responses thereto in the other three cases but not in the ice cream parlor case. After the court had granted the state's request to prohibit Watson's alibi evidence, the defendant raised for the first time the failure of the state to comply with the court's disclosure order in the ice cream parlor case. The defendant claimed, inter alia, that he should be relieved of the consequences of his violation of Practice Book § 763 and that Watson should be permitted to testify because the state had violated the court's earlier disclosure order. The court denied this motion and ordered, instead, a sanction against the state tailored to the particular material that had not been timely disclosed to the defendant.

It is true that where the state has failed to disclose materials to which the defendant is entitled pursuant to Practice Book §§ 741 through 745, the court may "grant appropriate relief, which may include . . . (3) Relieving the defendant from making a disclosure required by Sec. 756 . . . ." Practice Book § 747 (3). Practice Book § 756, entitled "Disclosure by the Defendant," encompasses the alibi notice required under Practice Book § 763. Whether such relief is appropriate, however, is a matter entrusted to the trial court's sound discretion in light of all the circumstances. See *State* v. *Shaw,* 185 Conn. 372, 386, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982). The court was well within its discretion in declining to order such relief here, because there was no connection between the state's failure to

comply with the court's disclosure order and the defendant's failure to file his notice of alibi. Other than suggesting a kind of quid pro quo, the defendant has not claimed at trial or on appeal that his lateness in filing his alibi notice was in any way the result of the state's failure to respond to his motion for disclosure and production.

V

The defendant also claims that the court erred in its instructions on robbery in the first degree, (1) in the jeans shop case, by submitting to the jury a statutory alternative for which there was insufficient evidence, and (2) in all four cases, by failing to instruct the jury properly regarding the need for its verdict to be unanimous. These arguments are without merit.

With respect to the jeans shop case, the court included in its instructions on the definition of robbery the statutory alternative that the defendant, in committing a larceny, used force or its threat "for the purpose of . . . compelling the owner . . . to deliver up the property or to engage in other conduct which aids in the commission of the larceny." General Statutes § 53a-133 (2). The defendant argues that this instruction was erroneous under *State* v. *Williams,* 202 Conn. 349, 363–64, 521 A.2d 150 (1987), because it submitted to the jury a theory of liability unsupported by the evidence in that Kelly, the shop proprietor, was forced into the cellar before anything was taken.[11] Thus, he argues, Kelly was compelled neither to deliver up the property nor to engage in conduct aiding the commission of the larceny.

---

[11] Although the defendant did not except to this portion of the charge, our Supreme Court has consistently held that this type of claim of instructional error is reviewable under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). See *State* v. *John,* 210 Conn. 652, 687, 557 A.2d 93 (1989); *State* v. *Williams,* 202 Conn. 349, 363, 521 A.2d 150 (1987).

The defendant's argument misconceives the nature of robbery as defined by General Statutes § 53a-133 (2). Pursuant to § 53a-133 (2) a robbery occurs when, in the commission of a larceny, the actor uses or threatens force *"for the purpose of"* compelling the owner to deliver property or to aid in the larceny. (Emphasis added.) Purpose is synonymous with object and intent. *State* v. *Williams,* supra, 356. "Robbery is an offense against the person, the distinguishing characteristic of which is the intimidation of the victim. The ability of a defendant actually to do what he has threatened, therefore, is not an essential element of this crime." *State* v. *Hawthorne,* 175 Conn. 569, 573, 402 A.2d 759 (1978). It was not necessary, therefore, that the state prove the defendant actually compelled Kelly to deliver up the property or to aid in the larceny; it was only necessary to prove that the defendant used or threatened force for that purpose. There was ample evidence, and the defendant does not contend otherwise, from which the jury could infer that the defendant, in brandishing the gun, had such an object in mind.[12]

The defendant's lack of unanimity argument focuses on the fact that the court submitted to the jury both subdivisions of General Statutes § 53a-133. Subdivision (1) requires that the defendant had used or had threatened force for the purpose of "[p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking . . . ." Subdivision (2), as noted above, requires that the defendant's purpose had been to compel "the

---

[12] Furthermore, even if we were to take the defendant's argument at full value, we would have little difficulty in concluding that the defendant, by forcing Kelly to remain in the cellar, compelled him to "deliver up" the property; see *State* v. *Pelletier,* 209 Conn. 564, 576, 552 A.2d 805 (1989) (throwing cinder block through window and ordering victims to "freeze" sufficient to establish that victims were forced to deliver property); or otherwise compelled him to aid in the larceny by remaining absent from its immediate scene, thereby rendering him unable to attempt to thwart it.

owner . . . to deliver up the property or to engage in other conduct which aids in the commission of the larceny." The defendant claims that this was erroneous under such cases as *State* v. *Jones,* 193 Conn. 70, 75–77, 475 A.2d 1087 (1984), *State* v. *Benite,* 6 Conn. App. 667, 674–75, 507 A.2d 478 (1986), and their progeny; see, e.g., *State* v. *Flynn,* 14 Conn. App. 10, 36–39, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988); because the two statutory subdivisions are conceptually distinct from each other.

Because the defendant neither filed a request to charge nor excepted to the charge as given, we undertake an initial, limited review to determine whether the record supports his claim. *State* v. *Spigarolo,* 210 Conn. 359, 388–89, 556 A.2d 112 (1989), citing *State* v. *Bailey,* 209 Conn. 322, 329–30 n.4, 551 A.2d 1206 (1988) (question whether record supports constitutional claim is whether claim is truly of constitutional proportions or is simply characterized as such by defendant). We conclude that the record does not support the defendant's claim because General Statutes § 53a-133 (1) and (2) are not conceptually distinct from each other under the facts of these cases, and, therefore, no further review is warranted.

Both subdivisions (1) and (2) of General Statutes § 53a-133 refer to the defendant's purpose in using or threatening force. Subdivision (1) refers to his purpose of using or threatening force to prevent or overcome resistance to the taking of the property, or to its retention immediately after the taking. Subdivision (2) refers to his purpose of using or threatening force to compel the owner to deliver up property or otherwise to aid in the larceny. These two states of mind are hardly conceptually distinct from each other, under the facts of the four robbery incidents involved here. Both states of

mind involved an intent to force or intimidate the victims to yield their property so as to permit its taking or retention by the defendant.

The defendant's reliance on *State* v. *Williams,* supra, 361–64, is misplaced. In *Williams,* the court held that the trial court erred by instructing the jury in accordance with General Statutes § 53a-133 (2), where the state had presented evidence under subdivision (1) but not under subdivision (2). Id. That case did not involve, however, the question of whether, under the verdict unanimity rubric of *State* v. *Jones,* supra, and *State* v. *Benite,* supra, those two subdivisions were conceptually distinct. *State* v. *John,* 210 Conn. 652, 692 n.11, 557 A.2d 93 (1989). Furthermore, as the defendant concedes, here, unlike *State* v. *Williams,* supra, there was sufficient evidence presented under both subdivisions.

## VI

The defendant's next claim mirrors his previous claim. He contends that the court erred in its robbery instructions by including, in its instructions on the underlying offense of larceny, an instruction on the concept of a withholding of property, as distinguished from the taking or obtaining of property.[13] More specifically, he argues: (1) because the concepts of a wrongful taking and a wrongful withholding are conceptually distinct, the court violated the precepts of *State* v. *Jones,* supra, and *State* v. *Benite,* supra, by not instructing the jury specifically that its verdict had to be unanimous regarding those concepts; and (2) in the alternative, there was insufficient evidence of a wrongful

---

[13] The court, in defining the offense of robbery in the first degree pursuant to General Statutes § 53a-133 (robbery involves the use or threat of force "in the course of committing a larceny"), properly charged the jury that a "person commits larceny when, with intent to deprive another of property or to appropriate the same to himself . . . he wrongfully *takes, obtains or withholds* such property from an owner." (Emphasis added.) General Statutes § 53a-119.

withholding, and therefore the court erred by submitting to the jury a theory of liability unsupported by the evidence, under *State* v. *Williams,* supra. We disagree.

Under the facts of these cases, "the three words 'taking,' 'obtaining,' and 'withholding' are inseparable. Certainly, as the defendant concedes, there was evidence of a 'taking' [in each case]. We cannot distinguish a difference between the defendant's 'taking' of [the victims'] property, and his ['withholding'] that property." *State* v. *Pelletier,* 209 Conn. 564, 576, 552 A.2d 805 (1989); *State* v. *John,* supra, 692. Thus, the concepts of a wrongful taking and a wrongful withholding are not distinct.

Moreover, there was sufficient evidence to support a determination of a wrongful withholding. Because "withhold" is not defined by the penal code, it must be read in its ordinary usage. See *Carruthers* v. *Vumbacco,* 4 Conn. App. 168, 171, 493 A.2d 259 (1985). It ordinarily means "to desist or refrain from granting, giving, or allowing: *keep in one's possession or control* . . . ." (Emphasis added.) Webster Third New International Dictionary. Although we do not rule out the possibility that in a given case there may be a wrongful withholding without a concomitant wrongful taking or obtaining, in these cases the meanings of the three words overlap. It is not necessary, as the defendant argues, that the victim demand a return of the property wrongfully taken in order for the defendant's retention of it to constitute a wrongful withholding. This conclusion is buttressed by the official commentary to the penal code that the basic definition of larceny "is purposely broad and is meant to encompass the myriad ways in which property may be stolen." Commission Comment, Conn. Gen. Stat. Ann. § 53a-119 (West 1985).

## VII

The defendant next claims that there was insufficient evidence to support the conviction of sexual assault in the first degree with a deadly weapon in violation of General Statutes (Rev. to 1987) § 53a-70a, because the state failed to prove the essential element of a "deadly weapon." Thus, the defendant argues, the court should have granted his motion for a judgment of acquittal on that charge.[14] We agree.[15]

The function of an information is to inform the defendant of the nature of the charge against him as required by the federal and state constitutions. *State* v. *Belton,* 190 Conn. 496, 501, 461 A.2d 973 (1983). It is fundamental that a defendant is required to defend only against the charge alleged. Id. " '[T]he state is limited to proving that the defendant has committed the offense in substantially the manner described.' " Id., quoting *State* v. *Ruiz,* 171 Conn. 264, 270, 368 A.2d 222 (1976). Thus, a defendant can be convicted of only the crime or crimes with which he is charged in the information. See, e.g., *State* v. *Orsini,* 187 Conn. 264,

---

[14] The state's response to the defendant's argument relies on *State* v. *Franko,* 199 Conn. 481, 488–93, 508 A.2d 22 (1986). This, however, misperceives the defendant's argument. In *Franko,* the defendant unsuccessfully challenged the enlargement of the charge against him by the court's jury instructions. Our Supreme Court found no constitutional violation because there was no unfair surprise or prejudice. Under those circumstances, the court held that the error amounted to a variance between the pleading and the proof, and that, absent an exception, where sufficient evidence on the uncharged theory was presented, such a variance did not amount to a constitutional violation. Id., 493. In the present case, however, the defendant complains, not of the enlargement of the charge by the court's jury instruction to include an uncharged theory of liability on which there was sufficient evidence, but of the lack of proof of an essential element of the crime as charged. Compare id., 492–93 n.13.

[15] This conclusion renders it unnecessary to consider the defendant's final claim of error, namely, that the court erred in its jury instructions on the offense of sexual assault in the first degree with a deadly weapon.

274, 445 A.2d 887, cert. denied, 459 U.S. 861, 103 S. Ct. 136, 74 L. Ed. 2d 116 (1982) (information must inform defendant of nature and cause of accusation).

The information in the Uniform Boutique case was in three counts. The first count, charging robbery in the first degree, alleged that the defendant, in the course of the robbery, "displayed *what he represented by his words or conduct to be a firearm, to wit: a pistol* in violation of [General Statutes §] 53a-134 (a) (4) . . . ." (Emphasis added.) The second count, charging sexual assault in the first degree, alleged that the defendant "compelled [the victim] to engage in sexual intercourse by the use of force . . . in violation of [General Statutes §] 53a-70 (a) . . . ." The third count, charging sexual assault in the first degree with a deadly weapon, alleged that the defendant "committed Sexual Assault in the First Degree in violation of section 53a-70 and in the commission of such offense he *displayed a deadly weapon, to wit: a pistol,* in violation of [General Statutes §] 53a-70a . . . ." (Emphasis added.)

"Deadly weapon" is defined in pertinent part as "any weapon, whether loaded or unloaded, from which a shot may be discharged . . ." General Statutes § 53a-3 (6). A "pistol" is defined as "any firearm having a barrel less than twelve inches . . . ." General Statutes § 53a-3 (18). " 'Firearm' means any . . . pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged . . . ." General Statutes § 53a-3 (19).

It is clear, therefore, from the definitions of "deadly weapon," "pistol" and "firearm," that, as the state framed the third count of the information in the Uniform Boutique case, it was required to prove that the pistol that the defendant displayed was capable of firing a shot. See *State* v. *Pina,* 185 Conn. 473, 475–76,

440 A.2d 962 (1981); *State* v. *Rose,* 169 Conn. 683, 687, 363 A.2d 1077 (1975). This conclusion flows from the state's allegation that the defendant, in the commission of the sexual assault in the first degree, "displayed a deadly weapon to wit: a pistol . . . ." This conclusion is also buttressed by reference to the first count of the information where the state, by contrast, alleged that the defendant, in the commission of the robbery, "displayed *what he represented by his words or conduct to be* a firearm, to wit: a pistol . . . ."

Thus, as the state framed the information in the Uniform Boutique case, in order to convict the defendant of robbery in the first degree, it was only required to prove that he displayed what he represented to be a pistol. In order to convict him of sexual assault in the first degree with a deadly weapon, however, the state was required to prove that he displayed a pistol, and that in turn required proof that the firearm he displayed was in fact capable of firing a shot. See *State* v. *Rose,* supra. There was no such proof.[16] Thus, the court

---

[16] We are aware that, in *State* v. *Manley,* 195 Conn. 567, 573–74 n.8, 489 A.2d 1024 (1985), our Supreme Court quoted a statement from two Pennsylvania cases that " ' "[a] reasonable fact finder may, of course, infer operability from an object which looks like, feels like, sounds like or is like, a firearm. Such an inference would be reasonable without direct proof of operability." ' *Commonwealth* v. *Holguin,* 254 Pa. Super. 295, 303, 385 A.2d 1346 (1978) ('bullet holes and spent lead slugs found'), quoting *Commonwealth* v. *Layton,* 452 Pa. 495, 498, 307 A.2d 843 (1973)." We consider to be dictum, and not controlling in this case, that part of the footnote referring to what looks like, feels like or is like a firearm, because in *Manley* there was ample evidence that shots had been discharged from the weapon in question. See id., 576–78. This case is controlled, however, by the square holding of our Supreme Court in *State* v. *Rose,* 169 Conn. 683, 363 A.2d 1077 (1975), where the court held to be legally insufficient, on the element of the operability of the gun in question, the evidence that the defendant "removed a small silver handgun from his waist, trained the gun on the night clerk and said: 'If you scream, I'll kill you.' " Id., 685. Thus, in *Rose* the court held that operability could not be inferred from what looked like or was like a firearm.

should have rendered a judgment of acquittal on the charge of sexual assault in the first degree with a deadly weapon.

This leaves open, however, the question of the proper disposition of the second count of the information in the Uniform Boutique case, namely, sexual assault in the first degree in violation of General Statutes § 53a-70. This question arises from the following procedural context.

General Statutes (Rev. to 1987) § 53a-70a (a) provides in pertinent part: "No person shall be convicted of sexual assault in the first degree and sexual assault in the first degree with a deadly weapon upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information."

The trial court properly charged the jury on the elements of the crime charged in the second count, sexual assault in the first degree. With regard to the third count, sexual assault in the first degree with a deadly weapon, it charged the jury that "the state must prove beyond a reasonable doubt that the defendant committed the crime of sexual assault in the first degree which is the offense which I just previously discussed with you and that such offense was committed while the defendant used or was armed with a deadly weapon or represented that he possessed a deadly weapon. A deadly weapon means any weapon loaded or unloaded from which a shot may be discharged." It also charged that if the jury found "that the state has proved beyond a reasonable doubt that the defendant in compelling the victim to submit to sexual intercourse as that term has been defined, used or was armed with and threatened the use of or displayed or represented that he possessed a deadly weapon, you will find the defendant guilty of the crime. If on the other hand, you find that

the state has failed to prove any element of this offense, you must render a verdict of not guilty as charged on this count."

The trial court then charged the jury that, if it found both such charges proven, it could not find the defendant guilty of both but should render a verdict of guilty only on the more serious charge of sexual assault in the first degree with a deadly weapon.[17] In returning its verdict, the jury found the defendant guilty on the the first count, robbery in the first degree, and on the third count, sexual assault in the first degree with a deadly weapon. When the clerk inquired of the jury regarding its verdict on the second count, sexual assault in the first degree, the jury responded: "On that charge, we the jury set it aside." The court thereupon accepted the verdicts on the first and third counts, and dismissed the second count.

It is clear, therefore, that the jury found the defendant guilty on both the second and third counts but, following the court's instructions, rendered its verdict only on the more serious charge of sexual assault in the first degree with a deadly weapon. It is equally clear, moreover, that the court's dismissal of the second count was a ministerial act flowing from the jury's verdict rendered in accordance with the court's instructions, and was not a determination that insufficient proof had been adduced on that count.

Under somewhat similar circumstances, our Supreme Court has remanded a case with direction to modify the judgment so as to reflect a conviction of a lesser

[17] It would have been preferable for the trial court to have permitted the jury to return guilty verdicts on both the second and third counts and then, as a matter of law pursuant to General Statutes § 53a-70a (a), to render a judgment of conviction only upon the third count and dismiss the second count. Under that procedure, in the event an error were found on appeal regarding the third count, as in this case, there would be an actual verdict on the second count that could be reinstated on the remand.

included offense with respect to the offense with which the defendant was charged. In *State* v. *McGann,* 199 Conn. 163, 178–79, 506 A.2d 109 (1986), the defendant was convicted of capital felony murder in violation of General Statutes § 53a-54b (2), which prohibits, inter alia, "murder committed by a defendant who is hired to commit the same for pecuniary gain . . . ." The Supreme Court held that there was insufficient evidence to support the finding that the defendant was "hired" to commit the murder. *State* v. *McGann,* supra, 176. Because murder in violation of General Statutes § 53-54a was a lesser included offense of capital felony murder as charged in the indictment, however, the court remanded the case with direction to modify the judgment so as to reflect a conviction of murder in violation of General Statutes § 53a-54a. Id., 178–79.

We believe that the same course is appropriate here, because under these particular circumstances sexual assault in the first degree was a lesser included offense of sexual assault in the first degree with a deadly weapon. We therefore order that the case be remanded with direction to modify the judgment so as to reflect a conviction of sexual assault in the first degree, and for sentencing on that offense.

There are four requirements for the application of the lesser included offense doctrine: (1) either the state or defendant requests an appropriate instruction for its application; (2) it is not possible to commit the greater offense, as described in the information or bill of particulars, without having committed the lesser; (3) there is sufficient evidence to justify conviction of the lesser; and (4) the proof on the differentiating element is sufficiently in dispute to permit the jury to find the defendant innocent of the greater and guilty of the lesser offense. *State* v. *Herring,* supra, 104–105. There

can be no doubt in this case that the third and fourth requirements are met. We turn, therefore, to the first two requirements.

The first requirement normally arises in the context of the question whether the court properly charged the jury with respect to a purported lesser included offense. See, e.g., *State* v. *Green,* 207 Conn. 1, 9–12, 540 A.2d 659 (1988). Even in the absence of such a request, however, the trial court may, sua sponte, properly submit a lesser included offense to the jury. *State* v. *Rodriguez,* 180 Conn. 382, 408, 429 A.2d 919 (1980). Similarly, an appellate court may invoke the doctrine where the trial court record justifies its application. *State* v. *McGann,* supra. We may do so, therefore, and thus satisfy the first requirement.

The second requirement is satisfied in this case as well. The purpose of this prong of the doctrine is to ensure that the defendant may be convicted only of an offense of which he is deemed to have been given fair notice in the charging documents. *State* v. *Jacobowitz,* 182 Conn. 585, 590–91, 438 A.2d 792 (1981); *State* v. *Rodriguez,* supra, 399–402. That purpose is fully satisfied here. The defendant was actually charged in the information with, and actively defended against, the charge of sexual assault in the first degree. Thus, he had full notice of that charge. Furthermore, as framed by the appropriate statutory sections, it is not possible ordinarily to commit sexual assault in the first degree with a deadly weapon, in violation of § 53a-70a, without first having committed sexual assault in the first degree, in violation of § 53a-70. Compare footnotes 2 and 3, supra. Finally, as the matter was submitted to the jury by the trial court, the jury was required to find the defendant guilty of sexual assault in the first degree, as charged in the information, in order to find him guilty of sexual assault in the first degree with a deadly weapon, as charged in the information.

There is error in part, the judgment of conviction of sexual assault in the first degree with a deadly weapon is set aside, and the case is remanded with direction to render a judgment of acquittal on that charge, to modify the judgment to reflect a conviction of sexual assault in the first degree, and for sentencing thereon.

In this opinion the other judges concurred.